113 So.2d 905

**Grover McCULLOUGH**

v.

**STATE.**

**6 Div. 635.**

Court of Appeals of Alabama.

May 12, 1959.

Rehearing Denied June 2, 1959.

**310**

Griffin & Wilson, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and John F. Proctor, Asst. Atty. Gen., for the State.

**CATES, Judge.**

This is an appeal from the Jefferson Circuit Court from a judgment of guilt, together with an appeal from a judgment denying a motion for a new trial.

A petty jury in the Circuit Court found McCullough guilty of mayhem and fixed his punishment at twenty years' imprisonment in the penitentiary. This case is a companion case to Mabry v. State, Ala. App., 110 So.2d 250.

The facts set forth in the Mabry opinion are incorporated herein by reference as the facts for this case, with the following supplement: (1) The tendency of the State's evidence here was that McCullough was the person who hit Aaron on the head with a tire tool, thereby knocking him unconscious; (2) McCullough's defense was one of alibi, i. e., that, although he was with this group in their original meeting and took part in their peregrinations up to and including the kidnapping of Aaron, nevertheless he left the others in order to go home before they went to the concrete block building used by the group as its "lair" or meeting house; and (3) after the defense had rested, and over the objection of the defendant, upon motion of the solicitor, the court called Jessie W. Mabry, who had been previously convicted in the companion case heretofore alluded to, as a witness to testify with respect to testimony given by himself in his own defense upon his own trial.

There was no question in the instant trial (as there was in Mabry's) as to any questions put to Mrs. Pritchett nor as to Cora's husband.

The question of whether or not McCullough was at the lair can be immaterial under one theory of the State's evidence, i. e., that a common unlawful design had been formed, and was being put into operation, certainly upon the kidnapping of Aaron. Code 1940, T. 14, § 6. This, of course, would, at common law, at the very least make McCullough an accessory before the fact, which, in turn, under our statute, Code 1940, T. 14, § 14 (abolishing in cases of felony the distinction between principal and accessory) would make him equally guilty and subject to the same punishment as that formerly prescribed for principals only. This Code section makes "all persons concerned in the commission of a felony" punishable without distinction between aiders or abettors and those who "directly commit the act."

Alternatively the State adduced evidence tending to prove that McCullough actually was present at all times from the original meeting on Mabry's lawn through the jettisoning of the half dead Aaron on a rural

road. Whether or not this tendency or the permissible inferences from McCullough's alibi testimony should govern the verdict presents a conflict of fact, a matter in which our jurisprudence has confided the determination exclusively in the jury, leaving this court's jurisdiction confined to questions of law.

The remarks of our learned Presiding Judge with respect to the demands which the defense made in Mabry's case for the production of writings purportedly containing statements of Aaron and of the two accomplices who turned State's evidence fully cover that point for this case.

■ At the beginning of the trial—presumably after arraignment—and certainly before the empaneling of the jury, McCullough's counsel moved the court that the prosecuting witness, Aaron, come "to the door of the witness room and observe the men sitting there and point out to us or the court's clerk which of the individuals in his opinion is the defendant, Mr. McCullough."

Upon the trial judge's overruling of this motion, defense counsel renewed the motion in another form; this alternative was denied by the court. Whereupon, counsel requested permission for the defendant to sit in the portion of the courtroom among the onlookers in that portion of the room open to the general public upon the ground that to require the defendant to sit at the "counsel table at this time would be requiring him to give evidence against himself."

The trial judge retorted, "Overrule your motion, have the defendant to come around, I never saw a case tried with the defendant back in the court room * * *."

When Aaron testified he identified McCullough as being at the "lair" immediately after someone had knocked him (Aaron) out with a piece of iron that "looked like some kind of wrench." We excerpt from the transcript of evidence describing what he saw upon regaining consciousness:

"A. I seen that man there for one. (Indicating)

"Q. This defendant, here? A. Yes, sir.

"Q. Did he have anything with him at that time? A. He had a piece of iron in his hand, he had a wrench, a thing that looked like a wrench with a big round thing on the end."

The defendant contends that Aaron's recollection was furnished by the court's putting McCullough at the counsel table and that under the rule of Smith v. State, 247 Ala. 354, 24 So.2d 546, this was reversible error.

In the Smith case, supra, it was held to be prejudicial to require the defendant, from time to time during trial, to stand up to ascertain if various witnesses could identify him. Our Supreme Court held that the opinion of this court in Wells v. State, 20 Ala.App. 240, 101 So. 624, governed: making a defendant stand up when identification was at issue was compulsion of testimony without his consent. This obtains even though, during the course of the trial, the defendant voluntarily takes the stand.

The Attorney General here says that the question is not one of a violation of McCullough's rights under § 6 of the Constitution (which prohibits compelling a defendant to testify against himself), but is purely a matter within the discretion of the trial judge, and cites in his brief 23 C.J.S. Criminal Law § 976, which reads as follows:

"The place where the accused shall sit during the trial is within the discretion of the court. Generally, his proper place is behind the bar or in the prisoner's dock if he is in custody, and near his counsel within the bar if he is on bail. It has also been held, however, that in either case he has the right to sit by his counsel during the trial."

As a general rule, during his trial, one indicted for a felony has, with respect to his seating in the courtroom,[1] three basic rights: (1) To be present at all stages of the trial; (2) to be confronted with, and hence be able to hear, the witnesses against him; and (3) the right of counsel which includes free access to his attorney.

The various parts of the courtroom have been listed as (1) the bench, (2) the clerk box (or desk), (3) bar, and (4) the area, State v. Underwood, 2 Overt., Tenn., 92. The first three are intended peculiarly for the court and its officers—clerk, attorneys and bailiffs. The Tennessee court goes on to say, "Strictly speaking, no person has a right to go into the bar but attorneys." Acquiescence of attorneys has allowed clients to "sit by the side of their counsel." As to criminal cases, the opinion seems to differentiate between a prisoner on bail and one in custody:

"If the former, his proper place is just within the bar near his counsel. If in custody, the officers of the court place him behind the bar within sight of the court, where he is attended to by the court and its officers."

"Behind the bar" we take to be either immediately inside the bar enclosure or in the first row of seats in the public area.

In People v. Chessman, 38 Cal.2d 166, 238 P.2d 1001, 1007, the court held that the trial court had the right to require Chessman (who had prior convictions of crimes of violence) not to approach the jury box nor the witness stand in the course of conducting his own defense—this even though "the prosecuting attorney moved about the courtroom and dramatically approached witnesses and jury." The opinion says:

"Considerations for the safety and security of all persons present in the courtroom, including the defendant, and for the judicial process itself, justified the trial judge in feeling it was unwise to allow defendant to wander freely about the courtroom."

Ordinarily in this State the accused sits at the counsel table next to his attorney or somewhere immediately nearby, and, if not on bail, with one or more of the deputies sitting at a strategically chosen place to thwart an escape. See Hodges v. State, 8 Ala. 55 (sheriff responsible for prisoner—not on bail—from beginning of trial); Hawk v. State, 84 Ala. 466, 4 So. 690 (bail bond—Code 1940, T. 15, § 207, as amended—binds sureties up to rendition of verdict).

We hold it was not error for the trial judge to deny McCullough's request to sit in the courtroom audience in order to test Aaron's ability to recognize him.

■ Appellant complains that it was error to restrict the latitude of cross-examination accorded him when Dr. Nolan W. Fulton, a medical witness called by the State, was on the stand. The alleged error consists of the trial judge's sustaining objections to two questions propounded by defense counsel, both of which went into the question as to some of the side effects of the injury suffered by Aaron, i. e., as to whether or not he was deprived in toto of his sexual powers.

These questions, while of possible interest to Aaron, were immaterial to mayhem, and under no legal theory would have supported any matter in justification of the offense or mitigation of punishment.

1. In Delaware, as in England, it seems that in a trial for felony or treason (though his counsel may come to him) the prisoner must keep his place in the dock, State v. Kupis, 7 W.W.Harr. 27, 37 Del. 27, 179 A. 640, 10 Halsbury's Laws of England (3d Ed.) 399, and cases there cited. In Philadelphia it seems customary for the accused to be seated in the prisoner's dock, but it is error to deny him the right to be seated alongside his attorney. Commonwealth v. Boyd, 246 Pa. 529, 92 A. 705; Commonwealth v. Hanley, 23 Pa.Dist.R. 987. See also Matthews v. State, 9 Lea, Tenn., 128; Bishop, New Crim.Procedure (2d Ed.), §§ 953 and 954, and cases there cited.

■ One of the detectives, on cross-examination, was asked whether it was a general rule on his part to mix up pictures of other persons along with the pictures of suspects. It is complained that the question should have been allowed. We find no error in the court's ruling to sustain the State's objection to the question, since what the witness actually did in this case was the only pertinent evidentiary fact.

■ The trial judge called Mabry, who had previously been convicted and sentenced at the time of McCullough's trial, as a witness for the court solely for the purpose of testifying as to his testimony at his own trial. The solicitor suggested that Mabry would be a reluctant witness, and therefore asked the court to call him. This request was addressed to the trial judge's sound discretion, Kissic v. State, 266 Ala. 71, 94 So.2d 202.

Mabry, upon being called, asserted his claim to a constitutional privilege (under both the State and Federal Constitutions) not to testify on the grounds that he might thereby be compelled to incriminate himself.

To support this claim of immunity, Mabry stated, among other things, that the testimony which he might be called upon to give might tend to incriminate him for a violation of the statutes of the United States in cases made and provided for the violation of civil rights, presumably 18 U.S.C. § 241.

When Mabry, in his own prior trial, went upon the stand in his own defense, he, of course, waived his constitutional immunity, and whatever he said then could be used elsewhere under the rules of evidence. When he took his appeal, the transcript of his testimony thereby became a self-proving public record of the State of Alabama, subject to public examination at all reasonable hours in the office of its custodian.

Mabry's testimony having thus come into the public domain, there could certainly be no injury which he had not already wreaked upon himself in asking him to identify what he, by his own appeal, affirmed to be what he had already said at his own trial. Thus, in Hall v. State, 134 Ala. 90, 32 So. 750, the testimony of the defendant in his own behalf at an earlier trial on a charge of rape was admissible in a prosecution for seduction. Mabry's is the converse of the situation in Odiorne v. State, 249 Ala. 375, 31 So.2d 132, where an accomplice's evidence earlier was used against him. Annotation 5 A.L.R.2d 1404 et seq. Above all we see no violation of any right of McCullough.

After the defense had rested, by way of impeachment the State put on the witness stand the timekeeper of the Rust Engineering Company of Birmingham. This timekeeper testified that the payrolls of the company failed to show that a certain Mr. Thomas Houston worked at all on Labor Day, 1957.

■ This refuted Mr. Houston's testimony that he had worked that day, arrived home about 4:30 in the afternoon, spent so many minutes in one activity and so many minutes in others until some time about 9:30 that evening he went to McCullough's house. McCullough contends that this testimony as to Houston's not working was impeachment on an immaterial matter. However, since Houston cast his mnemonic anchor upon his arrival home from work, we consider that it was fitting for the State to bring in this evidence. See Clancy Lumber Co. v. Howell, 260 Ala. 243, 70 So.2d 239.

Six episodes are cited to show bias and prejudice by the trial judge, all of which are claimed cumulatively (if not singly) to have hurt the defendant in having a fair trial. These episodes or colloquies have been brought together in Assignment of Error 44.

In Mabry v. State, supra, Assignment of Error XIX was bottomed also on claimed cumulative injury in the judge's remarks accompanying various rulings. There Harwood, P. J., concluded:

"We have carefully studied this record in the light of such contention. We find nothing therein which, in our opinion, could rationally be construed as probably injuring the appellant in any of his substantial rights, whether such instances be considered separately, or cumulatively. Being clear to this conclusion we see no need to burden this opinion by any detailed exposition on this point. In fact, we are impressed after a study of this record with the successful effort of the trial judge to conduct this trial in an atmosphere of complete fairness and impartiality." [110 So.2d 259.]

■ In the instant case the judge instructed the jury orally—in part:

"Now, gentlemen, before I forget and before I start to define mayhem to you, I would like to say this to you, that words exchanged between lawyers, lawyers themselves, or lawyers and the court, are not to be considered by you for or against the defendant, because that is not a part of the evidence in the case, you are only to consider the evidence in the case, don't consider those for any purpose whatsoever, because they are not evidence, we are all human and we often do have an exchange of words in the trial of a case. It is difficult not to. Sometimes we even say the wrong thing to each other and when we do, we don't mean that to mislead you whatsoever, because we want you to try and you must try the case on the evidence and the evidence alone, I wanted to call that to your attention. * * *"

This instruction ordinarily should cure any error unless palpably ineradicable. It does here.

■ Defense counsel, on cross-examination, put to one of the accomplices the following question, "Had you attended the meeting of the Alabama Council on Human Relations?" and again, he asked, "Are you or were you a member in good standing?" The court properly sustained the State's objections. We find nothing in the record that refers to this "council." We do not have any knowledge which would allow us to say that the questions were pertinent. Accordingly, we find no abuse in the trial court's discretion in sustaining these objections. Farlow v. State, 7 Ala.App. 137, 61 So. 474; Drake v. State, 257 Ala. 205, 57 So.2d 817.

■ As to the charges refused the defendant, we take up those which were ruled upon in Mabry v. State, supra.

"D2. The court charges the jury that if the jury believes that there was a plan between this defendant and others to scare a negro and that the castration of Judge Aaron was from a cause having no connection to the common object, that is scaring a negro, and was done by Floyd, the jury cannot convict the defendant of mayhem.

"D3. The court charges the jury that if you believe from the evidence that Griffin, Miller, Floyd, Pritchett, McCullough and Mabry picked up Judge Aaron on the night the castration is said to have been done, and an offense was committed by one or more of them from causes having no connection with the common object for which they picked Judge Aaron up, the responsibility for such offense rests solely on the actual perpetrator or perpetrators of the crime, and the jury cannot find the defendant guilty of mayhem.

"D4. The court charges the jury that if you believe from the evidence that Griffin, Floyd, Pritchett, Miller, McCullough and Mabry picked up Judge Aaron on the night of the castration is said to have been done, and an offense was committed by one of them from a cause having no connection with the common object for which they had been there, the responsibility

for such offense rests solely on the actual perpetrator or perpetrators of the crime, and the jury cannot find the defendant guilty of mayhem."

These proffered instructions (though differently worded) are subject to the same fault pointed out in Mabry, where we find:

"* * * These charges would make appellant's guilt depend upon a specific intent to castrate Aaron as the overt act of the conspiracy, whereas, if the conspiracy is entered into to do a wrongful act, the execution of which renders it probable that a crime not specifically designated may result, each is responsible for everything which may consequently or proximately result from such unlawful purpose, whether it be specifically designated or not, and whether it be perpetrated by all or less of the conspirators. * * *"—citing cases.

C2 requested by McCullough reads:

"C2. The court charges the jury that under the law of the State of Alabama, a conviction of the defendant cannot be had upon the uncorroborated testimony of his accomplices, and the court further charges the jury that under the evidence in this case, Mr. Griffin and Mr. Miller, as a matter of law, are accomplices, and if the jury believes that testimony of the said Mr. Griffin and Mr. Miller is the only testimony in this case tending to connect this defendant with the offense charged then it would be the duty of the jury to acquit the defendant of mayhem."

In Mabry B2 corresponds to C2 (and E2 also). The opinion there said:

"* * * misleading in that it places a verdict of guilty solely upon the testimony of Miller and Griffin. The charges are also argumentative, in that there was an abundance of evidence other than the testimony of these two witnesses upon which the jury could

find this appellant was connected with this crime. Further the law pertaining to the testimony of accomplices was covered in the court's oral charge."

■ A6, B1, and B2 are "reasonable doubt" charges and were essentially and substantially covered by the oral charge.

B3 and B5 were requests, in effect, emphasizing that the defendant must entertain a specific intent to maim. The wording (considered in the light of the oral charge as to aiding and abetting) is misleading, since it ignores the responsibility of an accessory.

B4 which would require the defendant to "intentionally conspire or aid" also could be characterized as misleading, since the positive act of an aider or abettor can adopt the mens rea exhibited by another in carrying out the act resulting from their conspiracy.

B7 (mayhem—unlawful, malicious and intentional act otherwise defendant not guilty) was covered by the oral charge.

B8, D7, E3, and E4 were covered by the oral charge.

C3, C4, C5, and C8 ignore tendencies of the State's evidence.

D5 was A9 of Mabry's case.

E5 was D2 in Mabry; E6 corresponds to D1 in that case: both (also E7–A1 of Mabry) ask for directions covering assault and battery as a lesser included offense. No tendency of the evidence supports the underlying theory.

F5, F6, F8, F9, G2, G3, G5, and G6 were all variedly of the effect of being affirmative or directive of a verdict of acquittal. Their refusal was correct.

We have reviewed the entire record, as required by the statute, and find it free of any errors to the probable prejudice of any substantial right of the appellant.

Affirmed.