117 So.2d 345

**Joe P. PRITCHETT**

v.

**STATE.**

**6 Div. 611.**

Court of Appeals of Alabama.

Oct. 27, 1959.

Rehearing Denied Nov. 24, 1959.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

Norman E. Moon, McDonald & Moon, Birmingham, for appellant.

CATES, Judge.

Pritchett is the third man to appeal to this court from a conviction of mayhem for the castration of Judge Aaron. Mabry v. State, ante, p. 129, 110 So.2d 250, and McCullough v. State, ante, p. 309, 113 So.2d 905.

We refer to those opinions for descriptions of the crime and the actions of the participants before and afterwards.

500

As to the first claimed error; viz., the judge's charging the jury that castration was maiming within our statute,[1] we think castration is a kind of mayhem. Blackstone (iv. Com. 205) says:

"* * * For mayhem is properly defined to be, as we may remember, the violently depriving another of the use of such of his members as may render him the less able in fighting, either to defend himself, or to annoy his adversary. And therefore the cutting off, or disabling, or weakening a man's hand or finger, or striking out his eye or foretooth, or depriving him of those parts the loss of which in all animals abates their courage, are held to be mayhems. But the cutting off his ear, or nose, or the like, are not held to be mayhems at common law; because they do not weaken but only disfigure him."

A man disabled from fighting was disadvantaged in litigation (i. e., trial by battle), hence the feudal distinction between "maims" and "wounds."

Formerly our statute (Aikin's Dig., p. 102) contained the expression, "such person shall be deemed guilty of mayhem," which links the present statute with the common law, and hence the rule of strict construction does not apply.

Blackstone, after explaining the disappearance of the ancient English punishment of membrum pro membro,[2] speaks of "castration, which all our old writers held to be felony," as punishable either capitally or by exile with loss of all goods.[3] Castration was the most aggravated form of maiming at common law and hence was certainly embraced in the territorial statute of 1806. This view is implicit in Wade v. State, 18 Ala.App. 322, 92 So. 97, and Mabry v. State, and McCullough v. State, supra.

The stenographic notes of the testimony of Miller, an accomplice, and of Tom Ellison, a deputy sheriff, who testified for the State could not, for some reason, be transcribed. Pritchett's counsel and the solicitor stipulated in writing as to their testimony.

Pritchett claims the loss of the short-hand notes by the court reporter denied him due process, in that through no fault of his own his appeal has been starved of food vital to sustain it.

We think that § 5 of the amended act to abolish bills of exceptions [4] gave Pritchett an adequate way of getting evidence up for review by this court. Certainly no due process is involved when a bill of exceptions is used. Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L. Ed. 891, 55 A.L.R.2d 1055, permits a bystander's bill of exceptions as affording due process enough for an appellate court to review the facts upon which the trial court has applied the law. No absence of counsel at the settlement of the testimony nor fraud in the stipulation is shown or claimed.

The substantial injury which cannot be adequately shown to us because of the loss of the stenographic notes is said to reside in the erroneous admission of silence of Pritchett when confronted with an accusation. We are cited to Moore v. State, 261 Ala. 578, 75 So.2d 135, 137.

1. Code 1940, T. 14, § 359: "Any person who unlawfully, maliciously, and intentionally cuts out or disables the tongue; puts out or destroys an eye; cuts, bites, or strikes off an ear; cuts, bites off, slits, mutilates, or destroys the nose or lip; or cuts, bites, tears, strikes off, or disables a limb, or member of any other person, shall, on conviction, be imprisoned in the penitentiary, for not less than two nor more than twenty years."

2. Maitland traces this talionic notion to Bracton's misconception of Alfred the Great's borrowing from Mosaic law. ii Pollock & Maitland (2d Ed.) 490.

3. Stephen, iii Hist. of Crim.Law of England 108, ascribes this view to Bracton; Russell on Crime (11th Ed.) 693.

4. Code 1940, Pocket Part, T. 7, § 827(3).

In the Moore case, the only direct evidence, as distinguished from corroboration, which made Moore out as a participant in the robbery was the statement made by an admitted principal, Farley. Moore was being questioned in the solicitor's office before a court reporter and then Farley was brought in and Moore's questioning for the time being was suspended while Farley was interrogated with Moore present. Upon Farley's being withdrawn, the questioning of Moore resumed, but the opinion is careful to point out that Moore was not asked if Farley's statement were true nor whether he wanted to deny what Farley had to say.

The court, per Merrill, J., said:

"* * * Under the particular circumstances surrounding this interrogation we do not think they were such as 'would have afforded an opportunity to enter a denial or objection' or 'naturally would provoke a reply' as contemplated by the cases on this subject. We think the higher duty here was on the solicitor to question Moore about the accusations Farley had just made than on Moore to speak up, when Farley, and not he, was being questioned."

Here Mr. Ellison, according to the stipulation, gathered a number of the participants in the warden's office in the Jefferson County jail shortly after their arrest. Miller, under no inducement, made a statement in Pritchett's presence in which he identified Pritchett as the leader of the group in the maiming of Aaron. In fact, Miller stated that Pritchett gave the order, "Captain, do your duty."

The stipulation as to Ellison's direct testimony states:

"* * * that after Miller and Griffin made that statement in the presence of witness and Defendant the

Defendant did not deny it, neither did he affirm it."

On Ellison's cross-examination, it was brought out that Pritchett several times was asked if he had anything to say, and he replied that he just wasn't talking. The stipulation goes on:

"* * * that as those questions were asked Mr. Miller the Defendant did not say, 'yea' or 'nay'; that witness asked Defendant if he had anything to say after that and Defendant said he had rather not say anything and witness asked him before, starting to question Miller, also. Defendant asked witness (sic) [witness asked defendant?] if he wanted to give a statement, it was his privilege to do so if he wished to clear the allegations against him and he made no statement. He just said he had rather not talk about anything at all."

Considering the specific accusation addressed to Pritchett accusing him and the express invitation given to him at a time when the law officers were making their preliminary investigation, we think that this was the natural and obvious time for him to have entered a denial, and his silence or refusal to talk is a circumstance of his conduct which was rightly considered probative and does not come within the influence of the Moore case.

The accusation seems to have been audible. Pritchett certainly had both opportunity and motive to deny it. His answer indicates he understood the charge so that his demeanor could indicate that he was in a position to deny it or affirm it within the meaning of the "adoption" principle. Kennedy v. State, 39 Ala.App. 676, 107 So.2d 913, 917, 918.

We have reviewed the entire record as required by Code 1940, T. 15, § 389, and consider the judgment below is due to be

Affirmed.