140 So.2d 369

### Otis ANDREWS

v.

### STATE.

### 8 Div. 806.

Court of Appeals of Alabama.

Feb. 27, 1962.

Rehearing Denied April 17, 1962.

Noble J. Russell and Robert Straub, Decatur, for appellant.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

Under an indictment charging him with manslaughter in the first degree, this appellant was, by a jury, found guilty of manslaughter in the second degree, his punishment being fixed at hard labor for one year and a fine of $500.00.

Mr. Dewey Moon was found dead in a roadside ditch early on the morning of 24 December 1960. His body bore massive injuries and there were indications that he had been struck by a motor vehicle. After an investigation, this appellant was charged with the death of Mr. Moon.

We have not detailed the evidence for in our opinion the following ruling necessitates a reversal of this case.

The record shows the following during the re-direct examination of Lt. E. E. Watts, one of the investigators of this accident, who appeared as a witness for the State:

"Q Did you ask him any questions?

"A Yes, I did.
"Q Did he reply to those questions?

**564**

"A  He replied to some of the questions I asked him; some he didn't reply to.

"Q  Will you tell the Court what you asked him, or what you told him and what he told you?

"MR. RUSSELL:  We object.

"THE COURT:  Objection overruled.

"MR. RUSSELL:  We except.

"A  Well, I had asked him several questions,—I don't recall exactly what they were,—but they were pertaining to the accident, and he refused to answer them, and then I said to him, 'I'll tell you how it happened,' and I began by saying that.  *  *  *

"MR. RUSSELL:  We object.

"THE COURT:  Objection overruled.

"MR. RUSSELL:  We except.

"A  *  *  *  that, 'You came home about 5:20 or 5:15 in the afternoon, like you said you did'.  *  *  *

"MR. RUSSELL:  Before he goes on, I object to each and every word stated by Lt. Watts in a statement as to how he thinks the accident happened.  I would like it noted as to each one.

"THE COURT:  This purports to be,—at least,—a statement made to the defendant, and do you purport to say he replied to it?

"MR. POWELL:  That he replied to some of it and failed to reply to portions of it.

"THE COURT:  Go on then.

"MR. RUSSELL:  We except.

"A  I said to him, 'You came home and went to your daddy's, like you said you did, and we have checked that; and you further went over to Morgan City and bought some gasoline, which you deny; then on your way back home you ran over Mr. Moon, and you went on home and told your wife about it, and you and she got in her automobile and you drove back around by the scene in order to see who you had run over.'  And I said, 'Did you stop and get out?'  He said, 'No, I didn't.'  I said, 'Then you got back in your car and went on back home and your wife went up to Mr. Moon's son's house, under the pretense of watching television, in order to see for sure whether Mr. Moon had gotten to his brother's, knowing,—I mean to his son's,—knowing he went down there practically every night to watch television.'

"MR. RUSSELL:  I have never heard anything like this in the trial of a case in my life!  I object, on the grounds it's illegal, incompetent, immaterial.  It is not a voluntary statement of the defendant.  The Court is allowing the State Investigator to testify, to make a statement, to theorize before the jury.

"THE COURT:  Just assign your grounds.

"MR. RUSSELL:  That is my grounds.  It's illegal, incompetent, to allow the State Investigator to theorize as to how he thinks something happened before the jury, and in the presence of the jury.

"THE COURT:  It would be incompetent if it were not a statement made to the defendant at the time and place specifically stated by the witness, and his reply to that.  That makes it the same as questions and answers, or any statement made by the defendant, and I don't know of any way of ruling it out, since I think it partakes of that nature, and the jury, I think, has a right to hear it, so I overrule the objection.

"MR. RUSSELL: We except.

"A And after I had finished making the statement to him, he didn't say anything.

"Q He never denied it?

"A No, sir."

The Attorney General contends that the admission of Lt. Watts' account was proper in that it tended to show an implied admission by silence.

 It is of course well established that an admission by silence may be inferred where an accusatory or inculpatory statement is made by another in the accused's presence, where it appears that it was under such circumstances as to evoke a denial of the truthfulness made against him, and he is in position to deny or affirm it. Raymond v. State, 154 Ala. 1, 45 So. 895; Pritchett v. State, 40 Ala.App. 498, 117 So.2d 345.

It will be noted that Lt. Watts testified that in his interrogation of the appellant he replied to some of the questions which he asked him, and "some he didn't reply to" or "he refused to answer them." It was within the appellant's constitutional rights to refuse to make a statement to Lt. Watts. This in itself would in our opinion negative any admission by silence that might have grown out of this interrogation.

More serious, however, is the fact that in this instance we have the criminal investigator being permitted to state to the jury his theory, or supposition, as to just what had occurred, and after a rather lengthy recital of this speculative process, halting long enough to ask a simple question, "Did you stop and get out?" to which appellant replied, "No, I didn't." Lt. Watts had no personal knowledge of any of the matters he recounted. He made no attempt to separate his numerous inculpatory statements, but made a series of them, which he followed with a single question, "Did you stop and get out?" The appellant did answer this question.

In view of the differing accusations leveled at him in Lt. Watts' suppositious account, we think it would be grossly unfair to this appellant to conclude that any admission could be reasonably inferred from his silence in failing to attempt to deny Lt. Watts' flood of statements expressing his speculative theory as to appellant's conduct.

The record shows that after some colloquy between the court and counsel, the court excluded that portion of Lt. Watts' statement following appellant's reply, "No, I didn't" to the question, "Did you get out?" Even so, the unexcluded portion of Lt. Watts' testimony was highly prejudicial and its admission must be considered as error necessitating a reversal of this judgment.

Reversed and remanded.