331 So.2d 284

**Harold LAWRENCE**

v.

**STATE.**

**4 Div. 418.**

Court of Criminal Appeals of Alabama.

April 20, 1976.

J. M. Albritton, Andalusia, for appellant.

William J. Baxley, Atty. Gen., and Ellis D. Hanan, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of buying, receiving, concealing or aiding in concealing one .357 Magnum pistol of the value of $175.00, the personal property of Jack Jambon, knowing that the same had been stolen or having reasonable grounds for believing that it had been stolen, and not having the intent to restore it to the owner. He was represented at arraignment and trial by court-appointed counsel. He pleaded not guilty. After conviction he gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent him on appeal.

Jack Jambon testified that he lived in Gallion, Louisiana and that on December 12, 1974, he was engaged in the business of operating a restaurant and lounge. That his place of business was broken into and the burglar or burglars took a 30–30 Winchester rifle, a .357 Magnum, a watch and $800.00 in cash. He stated he gave no one permission to enter his place and remove this property. He further testified that the serial number of the pistol was 3205745. He was shown the pistol during the trial and identified it as his Magnum and the same was introduced in evidence. He stated the fair market value of the pistol was $175.00.

On cross-examination he said he could recognize the pistol without reference to the serial number. He stated that a person whose first name he knew brought the pistol to him and said he needed some money to put in his bank account and he advanced $150.00 to this man and took the pistol as security for this loan. He said he knew one of the men who broke in his place and there were three or four from Alabama. He stated he had never seen appellant before he came to Alabama for this trial.

Auburn McGraw, a Deputy Sheriff of Covington County, testified that he received a telephone call from DeFuniak Springs, Florida and the caller identified himself as Fred Alford. Alford told him he had a .357 Magnum that he wanted to turn in. McGraw stated that Alford turned the pistol in to him and he kept it under lock and key until the date of appellant's trial. He identified the pistol in court.

Fred Alford testified that he lived in Opp, Alabama and he called Deputy Sheriff McGraw and told him he had a .357 Magnum he wanted to turn over to him and that he did give the pistol to the Deputy. He further testified that appellant brought this pistol to him and tried to sell it to him but he told appellant he didn't need it, that it was too big a gun. That appellant told him he was overdrawn at the bank and needed some cash. Alford told appellant he would loan him $100.00 and hold the pistol. He said that after he loaned appellant the $100.00 and took the pistol, he learned that the Sheriff's Department was looking for the pistol. He stated that he was in DeFuniak Springs and his son and appellant called him and said the Sheriff was looking for the pistol. Alford called the Sheriff and he was out of his office and he talked to Deputy McGraw and McGraw told him that the pistol had been reported stolen. Following this conversation the pistol was subsequently surrendered to Deputy McGraw.

On cross-examination he testified that he had known appellant for about twenty years and knew he was in the refrigeration business and had done several jobs for him on his trailer and mobile home. That at one time appellant lived in one of his mobile homes and gave him a check for the rent and the check bounced.

On re-direct examination Mr. Alford stated that appellant pawned the gun to him at 106 West Stewart Avenue, Opp, Alabama, in Covington County. That this was his mother's home who had died recently and he was there to clean up the place and take things out of the freezer.

Mr. Don Harrell, Deputy Sheriff of Covington County, testified that in December of 1974 and January 1975, he was assigned to investigate the theft of some articles in Louisiana that were reported to have been stolen by some men from Alabama. He went to Opp looking for appellant and learned that he was in Green Bay. He left Opp for Green Bay accompanied by a Deputy Sheriff, Sgt. Galliana, of the Lafourche Parrish, Louisiana. They found appellant in a Green Bay store and he came out to the car and Deputy Harrell placed him under arrest. Mr. Harrell gave the appellant the *Miranda* rights and warnings by reading them from a card. Appellant responded by saying he understood his rights.

The pre-Miranda predicate was laid showing that no promises, threats, rewards or any other type of inducements, were made by the officers to get appellant to make a statement. Deputy Harrell then asked appellant about the .350 Magnum pistol and appellant said "Don, you all need to help me," and Harrell told him that the best way he could help himself was to come up with that pistol. Appellant then said Fred Alford had it. They went to Alford's trailer and knocked on the door but no one answered the door. They then returned to Andalusia.

Deputy Harrell further testified that his investigation revealed that one Lavonne Mason at one time had possession of the pistol and had been indicted about the same pistol.

Sergeant Anthony Wilson Galliana, Jr., testified that he was in the car with Deputy Harrell when they went to the store in Green Bay. That appellant came out the store and Deputy Harrell told him he was under arrest for receiving stolen goods and gave appellant the *Miranda* rights in his presence by reading from a card he had in his possession. On the way to Opp to try to find Mr. Alford, appellant kept asking Harrell to help him and Harrell kept telling him if he wanted help himself, he had better come up with the pistol.

Galliana further testified that appellant discussed the pistol and made the statement that he knew the pistol was hot and he paid $20.00 for it and being a hot pistol is the reason he paid such a small price for it. He stated that he was not sure that Deputy Harrell was present in the car when appellant made this statement as he got out of the car at Alford's trailer house looking for him and he was gone about five minutes.

On cross-examination this witness was asked if he knew what relation David Mason was to Lavonne Mason and he said they were brothers. He was asked if Lavonne Mason was in Louisiana on the burglary and said, "No, sir, as far as we found out in the course of our investigation his vehicle was used," but so far as he knew Lavonne was not in the group of four people who committed the burglary. He further stated that so far as he could recall they did not pick up Lavonne Mason at the time they picked up appellant and that to the best of his recollection Lavonne was not in the back seat with appellant at the same time when they left Green Bay for Opp.

Deputy Harrell was called for further re-direct examination and stated that on the trip from Andalusia to Opp he stopped at the Fun House located in Opp and got Lavonne Mason to go with them to Green Bay for the purpose of taking appellant into custody. On the way back he let Lavonne Mason out at the Fun House to get his car with instructions that he follow them to Andalusia.

On recross-examination Harrell testified that he got appellant's name from Lavonne Mason. That Mason was one of his informers and that he knew Mason had been indicted in connection with the .357 Magnum, but that he had not been tried prior to appellant's trial. He further stated that Mason was in the courthouse during appellant's trial and he had seen him talking to the District Attorney.

The defense sought to call Lavonne Mason as an adverse witness after the State had rested its case against appellant. Mason was not called as a witness for the State. At first the Court granted the defense motion to examine Mason as an adverse witness but later changed his ruling and would not permit the defense to examine Mason as an adverse witness. This last ruling was made outside of the presence and hearing of the jury.

It must be noted that Mason was indicted for the same offense that appellant was on trial for having committed. Had he been called as a witness the Court would have been compelled to admonish him of his rights against self-incrimination and if he had declined to testify that would have ended the matter.

The general rule on this subject is stated in Am.Jur.2d, Section 3, page 28, as follows:

"In a number of instances the propriety of the court's action in calling as its own witnesses persons who were personally present at the transaction forming the basis of the prosecution, or whose testimony was material to the issues in the case, has been upheld under the facts and circumstances shown. In some instances, accomplices and co-indictees have been held properly called as court's witnesses, and the propriety of the trial court's making a witness its own after the latter had commenced to testify as a witness of the prosecution, has occasionally been recognized. *But while it seems that it is within the discretion of a trial judge to honor a request by the defendant that a person be called as the court's witness, attempts to predicate error on a refusal by the trial court to grant such a request have been uniformly unsuccessful."* Emphasis supplied.

In *McCullough v. State*, 40 Ala.App. 309, 113 So.2d 905, this Court held that a request by the State to have the Court call an apparently reluctant witness was a matter addressed to the sound discretion of the trial court.

■ The converse of the above rule is equally true when the request is made by the defense. The trial court did not abuse its discretion in not permitting appellant to examine Mason as an adverse witness under the circumstances of this case.

Appellant reserved an exception to the following portion of the Court's oral charge:

"Now our courts have said that the unexplained possession of recently stolen property is a circumstance, together with all of the evidence in the case, to which the jury may look to determine whether or not the defendant either knew that the property was stolen or had reasonable grounds to believe the property was stolen."

The Court at the request of appellant the following written charge:

"The Court charges the Jury that under the indictment in this case, the elements must be proven by the State beyond all reasonable doubt and to a moral certainty to each and every one of you are, first, that the defendant did buy, receive or conceal or aid in concealing personal property, knowing that it had been stolen and not having the intent to restore it to the owner. Those are the elements necessary and you must believe from the evidence presented to you here, beyond all reasonable doubt and to a moral certainty, that those elements were present be-

fore you can find this defendant guilty under the charge in the indictment."

In *Character v. State,* 51 Ala.App. 589, 287 So.2d 916, this Court said:

"It is the law of this state that the unexplained possession of property does not raise the presumption that the property was stolen. There must be other evidence of the corpus delicti. When this has been shown, and the stolen property, soon after the offense, is found in possession of a person, who is unable to give a satisfactory explanation of his possession, then the jury is authorized to infer his guilt. *Orr v. State,* 107 Ala. 35, 18 So. 142; *Buckles v. State,* 291 Ala. 352, 280 So.2d 814 (1972).

"The requisite scienter for the crime of receiving stolen property may be inferred from the recent possession of stolen goods. *Stanley v. State,* 46 Ala.App. 542, 245 So.2d 827.

"In *Buckles,* supra, our Supreme Court cited with approval the following quotation from the case of *Aron v. United States,* 8 Cir., 382 F.2d 965, 970:

'The doctrine that possession of recently stolen property gives a permissible inference of knowledge on the part of the possessor that the property had been stolen, unless the possession thereof is accounted for in a reasonable and satisfactory manner consistent with the circumstances of the possession, is a factually sound and a necessary evidentiary rule. Without this evidentiary rule in criminal cases it would be almost impossible to consider for conviction any of the possessors or fences of stolen property unless they admitted that they knew the property to be stolen, which is an admission not likely to be forthcoming.' "

Appellant did not testify or offer any evidence in his behalf. He did move to exclude the State's evidence on the ground the State failed to prove a prima facie case against appellant. This motion was overruled. Appellant requested the affirmative charge which was refused. He filed a motion for a new trial which was overruled and denied.

In *Young v. State,* 283 Ala. 676, 220 So. 2d 843, the Supreme Court held:

"Where the evidence presented raises questions of fact for the jury, and such evidence, if believed, is sufficient to sustain conviction, the denial of a motion to exclude the state's evidence, the refusal to give the affirmative charge and the overruling of a motion for new trial, does not constitute error. *Drummond v. State,* 37 Ala.App. 308, 67 So.2d 280; *Wade v. State,* 24 Ala.App. 176, 132 So. 71."

Under the evidence in this case, the guilt vel non of appellant was for the jury and this Court is without warrant to disturb the verdict of the jury. Accordingly, the case is due to be affirmed.

AFFIRMED.

TYSON, DeCARLO and BOOKOUT, JJ., concur.