Appellant was indicted and convicted under Alabama Code § 13A-5-31 (a)(2) (Supp. 1977) for robbery or attempts thereof when the victim is intentionally killed. His punishment was fixed at life imprisonment without parole.
The sufficiency of the State's evidence is not raised on appeal.[1] Therefore, a lengthy recital of the facts is unnecessary. Briefly stated, Ms. Gail Nix, the victim was abducted by appellant around 7:18 p.m. on February 12, 1979, at the Green Springs branch of the First National Bank of Birmingham. The victim had just made a ten-dollar withdrawal from her checking account by using her "William Teller" card at the bank's automatic teller system. Bank records demonstrated that Ms. Nix's "William Teller" card was used twice more during the next two hours. Eighty dollars was withdrawn *Page 944 
from Ms. Nix's checking account at the Century Plaza branch at 8:46 p.m. and ten dollars was withdrawn at the Center Point branch at 9:13 p.m.
Charles Edward Vanderford, who was with appellant when Ms. Nix was abducted, and appellant's wife, Christine Moulds, also used the victim's credit cards to purchase clothing at Penney's and Zayre's department stores that night. After making the clothing purchases, Vanderford and Mrs. Moulds returned to appellant's residence where they met appellant and the victim.
Appellant removed certain rings the victim was wearing, took her back to her car and instructed Vanderford and his wife to "follow him." Appellant drove the victim to the Graysville area on Highway 78, pulled off the side of the road and summarily shot her in the back of the neck with his pistol. Appellant later admitted to State witness George Curtis Burnett, Jr. that the victim "was sitting there begging me for her life" and "I blew her brains out."
 I
Appellant's motion for change of venue was properly denied by the trial court. The trial court conducted an extensive voir dire examination of the prospective jurors and ascertained that many of the jurors had read about the case in the newspaper or had seen something about the case on television. When these prospective jurors were questioned further, individually, in the trial court's chambers, a large majority of the jurors stated that they could not remember any of the details about the pretrial publicity and that the publicity would not influence their verdict. The few prospective jurors who felt that the pretrial publicity would influence them were successfully challenged for cause. We have carefully reviewed this matter and find no error in the trial court's ruling.Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507,16 L.Ed.2d 600 (1966).
The granting of an accused's motion for change of venue rests within the sound discretion of the trial court and its ruling thereon will not be disturbed except for gross abuse. Cobern v.State, 273 Ala. 547, 142 So.2d 869 (1962); Burnett v. State,350 So.2d 718 (Ala.Cr.App. 1977). As this court stated inAnderson v. State, 362 So.2d 1296, 1298-1299 (Ala.Cr.App. 1978):
 "Section 15-2-20, Code of Alabama 1975, authorizes a defendant to have his trial removed to another county if he cannot receive a fair and impartial trial in the county in which the indictment is found. Gilliland v. State, 291 Ala. 89, 277 So.2d 901
(1973). However the existence of widespread publicity alone does not indicate that a defendant will not get a fair trial. The law focuses on the impartiality of the trial jury. Turk v. State, 348 So.2d 878
(Ala.Cr.App. 1977); Mathis v. State, 52 Ala. App. 668, 296 So.2d 755, cert. quashed, 292 Ala. 732, 296 So.2d 764 (1973), cert. denied, 419 U.S. 1106, 95 S.Ct. 777, 42 L.Ed.2d 802 (1975). Actual prejudice directed toward the accused resulting from the extensive publicity must be shown. Botsford v. State, 54 Ala. App. 482, 309 So.2d 835 (1974), cert. denied, 293 Ala. 745, 309 So.2d 844 (1975); Annotation, 33 A.L.R.3d 17 (1970).
 "On motion for a change of venue in a criminal case, the defendant has the burden of showing, to the reasonable satisfaction of the court, that a fair and impartial trial cannot be had and an unbiased verdict cannot reasonably be expected. Boutwell v. State, 279 Ala. 176, 183 So.2d 774 (1966); Godau v. State, 179 Ala. 27, 60 So. 908 (1913).
 "Newspaper articles, without more, are not evidence on a motion for change of venue; their effect must be shown. Beddow v. State, 39 Ala. App. 29, 96 So.2d 175
(1956), cert. denied, 266 Ala. 694, 96 So.2d 178
(1957), 355 U.S. 930, 78 S.Ct. 412, 2 L.Ed.2d 414
(1958).
 "Except in the situation where there is a showing of `inherently prejudicial publicity which has so saturated the community, as to have a probable impact upon the prospective jurors', the trial court's primary responsibility in dealing with allegedly prejudicial pretrial publicity is whether, as a result of such publicity, it is *Page 945 
reasonably unlikely that the defendant can secure a fair and impartial trial. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543
(1965); Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); United States v. Jones, 542 F.2d 186 (4th Cir. 1976); McWilliams v. United States, 394 F.2d 41 (8th Cir. 1968).
 "In Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975), the United States Supreme Court recognized that:
 "`Qualified jurors need not, however, be totally ignorant of the facts and issues involved.
 "`To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.
 "`At the same time, the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate `the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'
 "Recently the Supreme Court affirmed the principles expressed in Murphy.
 "`Petitioner's argument that the extensive coverage by the media denied him a fair trial rests almost entirely upon the quantum of publicity which the events received. He has directed us to no specific portions of the record, in particular the voir dire
examination of the jurors, which would require a finding of constitutional unfairness as to the method of jury selection or as to the character of the jurors actually selected. But under Murphy, extensive knowledge in the community of neither the crimes nor the putative criminal is sufficient by itself to render a trial constitutionally unfair. Petitioner in this case has simply shown that the community was made well aware of the charges against him and asks us on that basis to presume unfairness of constitutional magnitude at his trial. This we will not do in the absence of a trial atmosphere utterly corrupted by press coverage.' Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 2303, 53 L.Ed.2d 344 (1977).
 "The proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination."
Applying the foregoing principles of law to the facts in this case, we find that the jury was impartial and adhered to its sworn duty to base its verdict upon the evidence adduced and the law as explained in the court's instruction. Bowen v.State, 274 Ala. 66, 145 So.2d 421 (1962); Anderson, supra. The fact that jurors knew of the case did not establish that at the time of empaneling they were biased against the defendant where they swore that their knowledge would not affect their judgment. Hale v. United States, 435 F.2d 737 (5th Cir. 1970),cert. denied, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142
(1971). Absent inherently prejudicial publicity which has so saturated the community as to have a probable impact upon the prospective jurors, there must be some showing of a connection between the publicity generated by the news articles, radio and television broadcasts, and the existence of actual jury prejudice. Anderson, supra.
 II
The trial court did not abuse its discretion by requiring the prosecutor and defense counsel to begin striking the jury after both sides had been given approximately one hour to review the prospective juror lists. From the record we find the following:
 "THE COURT: All right, Larry, we have got to get this jury, we can't just keep them sitting.
 "MR. SHEFFIELD: I know that, Judge, and I'm not holding it up, but we just got the thing, we haven't even had time to *Page 946 
look at it. I want the record to show that at the time we are being, I presume it's ordered, to strike this jury, that we have just got our strike lists in order and have not had time to study the jurors and study our notes as to the desirability of the jury and we do not feel that we are at this time adequately prepared or in anywise ready to strike the jury, and we object to being forced to strike a jury at this time due to the fact that we are unprepared to do so.
 "THE COURT: Well, as far as your being forced, I'm not forcing anyone to strike in a certain fashion but both sides have had approximately an hour to go over the lists. That was done, and as a matter of fact, I originally gave thirty minutes and I have extended it for an additional thirty minutes and during that period of time I went back out and reseated the jury, reidentified them as to location as to where they were actually seated so I feel like the additional thirty minutes of time offered by the Court for the selection of the jury is ample at this time so I am going to overrule your motion."
The conduct of a trial rests squarely in the discretion of the presiding judge and unless it clearly appears that there had been an abuse of discretion the appellate courts will not interfere. Roberts v. State, 338 So.2d 466, 472 (Ala.Cr.App. 1976) and authorities cited therein.
 III
The trial court did not abuse its discretion in having the witness Vanderford declared a court's witness, or in effect a witness adverse to the prosecution, when it became apparent that Vanderford was reluctant to testify.
Vanderford was initially called by the State. He had been previously convicted and sentenced as a juvenile for his participation in the crime. He had also made prior statements to the prosecution incriminating appellant and had testified at appellant's preliminary hearing. When Vanderford demonstrated a sudden reluctance to testify, the prosecution claimed "surprise" and requested the trial court to declare Vanderford a hostile witness. After further attempts to refresh Vanderford's recollection failed, Vanderford was declared a court's witness subject "to cross-examination by either party." This ruling was proper.
Our Supreme Court in Kissic v. State, 266 Ala. 71,94 So.2d 202, 205 (1957), quoting from Anderson v. State, 35 Ala. App. 111, 44 So.2d 266 (1950), observed:
 "It is within the sound discretion of a trial judge, in the interest of truth and justice, to call to the stand and examine, or permit to be examined by both parties, any witness who may be able to shed light upon the issues, the court being careful to preserve an attitude of impartiality."
Further, in McCullough v. State, 40 Ala. App. 309,113 So.2d 905, cert. denied, 269 Ala. 698, 113 So.2d 912 (1959), a request by the State to have the court call an apparently reluctant witness was held to be a matter addressed to the sound discretion of the trial court. Lawrence v. State,57 Ala. App. 639, 331 So.2d 284 (1976).
This court recognized in Lawrence, supra, the following rule regarding adverse witnesses:
 "`In a number of instances the propriety of the court's action in calling as its own witnesses persons who were personally present at the transaction forming the basis of the prosecution, or whose testimony was material to the issues in the case, has been upheld under the facts and circumstances shown. In some instances, accomplices and co-indictees have been held properly called as court's witnesses, and the propriety of the trial court's making a witness its own after the latter had commenced to testify as a witness of the prosecution, has occasionally been recognized.'" 331 So.2d at 287.
The practical effect of characterizing a witness as "adverse" or "hostile" merely allows the party calling that witness to consider him as the witness of his opponent *Page 947 
for purposes of examination. This allows the party to examine the witness by use of the tools available on cross-examination, including contradition and impeachment. Anderton v. State,390 So.2d 1083 (Ala.Cr.App.), cert. denied, 390 So.2d 1087 (Ala. 1980). Therefore, the application of this rule must be guided by the sound discretion of the trial judge. Anderton, supra.
 IV
The appellant's Sixth Amendment right to confront witnesses was not violated by the prosecution's use of Vanderford's prior statements and testimony at appellant's preliminary hearing in questioning Vanderford.
Those principles announced in Douglas v. Alabama,380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), cited by appellant, are inapplicable to the facts in this case, because Vanderford was subjected to a rigorous and thorough cross-examination by defense counsel. Although Vanderford attempted to invoke his privilege against self-incrimination, the trial court, finding that Vanderford had already been convicted and was "not subject to prosecution for any matters that occurred," instructed Vanderford to answer the questions under penalty of contempt. Vanderford, with counsel present, then complied. The examination of Vanderford by the prosecution and the defense was extensive. Vanderford's prior statements and testimony at appellant's preliminary hearing, as well as Vanderford's present recollection of what transpired when the victim was killed, were carefully scrutinized by both sides.
The facts in this case are markedly similar to those inCalifornia v. Green, 399 U.S. 149, 90 S.Ct. 1930,26 L.Ed.2d 489 (1970). In that case it was held that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and is subject to full and effective cross-examination.399 U.S. at 158, 90 S.Ct. at 1935.
 "[T]he Confrontation Clause does not require excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend or otherwise explain the inconsistency between his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories." 399 U.S. at 164, 90 S.Ct. at 1938.
It was further held in California v. Green, supra, that even had there been an absence of opportunity for full cross-examination of the witness (Porter) at trial, the admission into evidence of the preliminary hearing testimony would not violate the Constitution.
 "We also think that Porter's preliminary hearing testimony was admissible as far as the Constitution is concerned wholly apart from the question of whether respondent had an effective opportunity for confrontation at the subsequent trial. For Porter's statement at the preliminary hearing had already been given under circumstances closely approximating those that surround the typical trial. Porter was under oath; respondent was represented by counsel — the same counsel in fact who later represented him at the trial; respondent had every opportunity to cross-examine Porter as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings. Under these circumstances, Porter's statement would, we think, have been admissible at trial even in Porter's absence if Porter had been actually unavailable, despite good-faith efforts of the State to produce him. That being the case, we do not think a different result should follow where the witness is actually produced.
 "This Court long ago held that admitting the prior testimony of an unavailable witness does not violate the Confrontation Clause. Mattox v. United States, 156 U.S. 237 [15 S.Ct. 337, 39 L.Ed. 409] (1895). That case involved testimony given at the defendant's first trial by a witness who had died by the time of the second trial, but we do not find the instant *Page 948 
preliminary hearing significantly different from an actual trial to warrant distinguishing the two cases for purposes of the Confrontation Clause. . . .
 ". . . It may be that the rules of evidence applicable in state or federal courts would restrict resort to prior sworn testimony where the declarant is present at the trial. But as a constitutional matter, it is untenable to construe the Confrontation Clause to permit the use of prior testimony to prove the State's case where the declarant never appears, but to bar that testimony where the declarant is present at the trial, exposed to the defendant and the trier of fact, and subject to cross-examination. As in the case where the witness is physically unproducible, the State here has made every effort to introduce its evidence through the live testimony of the witness; it produced Porter at trial, swore him as a witness, and tendered him for cross-examination. Whether Porter then testified in a manner consistent or inconsistent with his preliminary hearing testimony, claimed a loss of memory, claimed his privilege against compulsory self-incrimination, or simply refused to answer, nothing in the Confrontation Clause prohibited the State from also relying on his prior testimony to prove its case against Green." 399 U.S. at 165-168, 90 S.Ct. at 1938-1940.
In applying the foregoing principles of law from Californiav. Green, supra, to the facts in this case, we find that appellant's Sixth Amendment right to confront Vanderford was not violated.
 V
Appellant next contends that Vanderford should not have been required to testify after attempting to invoke his Fifth Amendment privilege against self-incrimination because his testimony may have placed him in jeopardy of being charged with perjury. This argument fails because appellant does not have standing to assert Vanderford's Fifth Amendment rights.
"[T]he Fifth Amendment privilege against compulsory self-incrimination, being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at trial." United States v. Nobles, 422 U.S. 225,234, 95 S.Ct. 2160, 2168, 45 L.Ed.2d 141 (1975). The Fifth Amendment "privilege is a personal privilege: it adheres basically to the person, not to information that may incriminate him." Nobles, 422 U.S. at 233, 95 S.Ct. at 2167. In any event, the Fifth Amendment privilege against compulsory self-incrimination provides no protection for the commission of perjury. United States v. Apfelbaum, 445 U.S. 115,100 S.Ct. 948, 63 L.Ed.2d 250 (1980).
 VI
Appellant maintains that the trial court erred in not allowing him to attempt to impeach Vanderford with a tape recorded statement made to defense counsel.
It is noted that a proper predicate was not established for the admission of the tape recorded statement. See Alonzo v.State ex rel. Booth, 283 Ala. 607, 219 So.2d 858 (1969). A magnetic tape recording may be used in evidence when it is of matter otherwise legal, and provided that proper safeguards are shown to have been used so as to protect the recording against error or spoliation and the speakers recorded are properly identified and adequate safeguards are taken to insure authenticity. Fikes v. State, 263 Ala. 89, 81 So.2d 303, 311
(1955), rev'd on other grounds, 352 U.S. 191, 77 S.Ct. 281,1 L.Ed.2d 246 (1957). As this court stated in Voudrie v. State,387 So.2d 248 (Ala.Cr.App.), cert. denied, 387 So.2d 256 (Ala. 1980):
 "The rules for testing the admissibility of recordings have been outlined as follows:
 "`(1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of *Page 949 
the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement.' 58 A.L.R.2d at 1027-8.
 "Thus not only is a proper request necessary but a proper predicate is necessary before a sound recording can be admitted into evidence."
The admission of tape recordings into evidence is within the sound discretion of the trial judge. Bufford v. State,382 So.2d 1162 (Ala.Cr.App.) cert. denied, 382 So.2d 1175 (Ala. 1980), rev'd on other grounds, 399 So.2d 894 (Ala.Cr.App. 1981). Since Vanderford's taped conversation was not properly authenticated, we find no abuse in the trial court's exercise of its discretion on this issue.
Moreover, defense counsel, in his efforts to impeach Vanderford, asked several questions concerning the contents of the taped conversation which the witness answered. There was no indication by defense counsel that Vanderford's testimony in this regard was any different than the taped conversation. Therefore, even if the tapes were erroneously excluded, which they were not, it would have been harmless.
 VI
During the cross-examination of Sergeant James Earl Smith of the Jefferson County Sheriff's Department, who was present when appellant was arrested, the following exchange occurred:
 "Q. Okay, now let me ask you this: When he was arrested, did Danny make any statement to you, at the time now when he was just actually taken into custody?
"A. Well, yes, he did.
"Q. Do you recall what it was?
"MR. BARBER: We object, may it please the Court.
"THE COURT: Sustain."
Appellant maintains that he made a spontaneous declaration, "This has got to be a frame up," at the time of his arrest and that this evidence should have been presented to the jury.
While the trial court's reasoning for its ruling is not shown, we hold that the ruling resulted in harmless error at most. After an examination of the entire cause it is our opinion that the rejection from evidence of appellant's alleged statement, "This has got to be a frame up," did not injuriously affect his substantial rights. Rule 45, ARAP.
Having found no error prejudicial to appellant's substantial rights, the judgment by the Jefferson Circuit Court is hereby affirmed.
AFFIRMED.
All the Judges concur.
[1] Our review of this case is not governed by Rule 45A, Alabama Rules of Appellate Procedure, the "plain error" rule, because there was no imposition of the death penalty. Owen v. State,418 So.2d 214 (Ala.Cr.App. 1982); Graham v. State,403 So.2d 275 (Ala.Cr.App. 1980), cert. denied, 403 So.2d 286 (Ala. 1981).