# Horton v. The State.

## Prosecution for Cruelly Killing a Dog.

1. *Cruelty in killing a domestic animal; what is.*—The mere act of killing a domestic animal without more is not punishable under section 5093 of the Code. The killing must be attended with some elements of cruelty such as are mentioned in the statute, it not being the purpose of the statute to punish for any offense against the owner of the property, but for the prevention of cruelty to the animal itself.

[Horton v. The State.]

APPEAL from Shelby County Court.
Tried before Hon. A. P. LONGSHORE.
The facts are sufficiently stated in the opinion.

MCMILLAN & THETFORD, for appellant, cited, *Commonwealth v. Lewis,* 140 Penn. State Rpts.

CHAS. G. BROWN, Attorney-General, for the State, cited, Bishop on Statutory Crimes, § 1112; *Commonwealth v. Turner,* 145 Mass. 296; *Commonwealth v. McClellan,* 101 Mass. 34.

DOWDELL, J.—The defendant was prosecuted and convicted in the county court of Shelby county under section 5093 of the Code of 1896, for cruelly killing a dog. The evidence without conflict showed that the defendant shot the dog with a rifle producing almost instantaneous death of the animal. The question now presented is, does such a killing come within the meaning and purview of the statute. The statute reads: "Any person, who overrides, overdrives, overloads, drives when overloaded, tortures, torments, deprives of necessary sustenance, cruelly beats, mutilates, or cruelly kills, or causes or procures to be overriden, overdriven, overloaded, driven when overloaded, tortured, tormented, deprived of necessary sustenance, cruelly beaten, mutilated, or cruelly killed, any domestic animal" etc. The manifest purpose of the statute is the prevention of cruelty to domestic animals, and it is immaterial whether the cruelty is inflicted by the owner of the animal, or by another. The word cruelly as employed in the statute must have some significance, and when taken in connection with such other words as "torture," "torments," "mutilates," or "cruelly beats" found therein, as well as with the manifest purpose of the statute, evidently means something more than to kill. The manner of the killing, such as tormenting or torturing to death, or prolonging the agony, suffering, and pain of the animal in terminating its life. It not being the purpose of the statute to punish the accused for any offense against the owner of the property, but its enactment being for the prevention of cruelty to the animal itself, it might

follow, that if the mere act of killing the animal without more be cruelty within the meaning of the statute, that then he who kills his pig, or ox, for the market, would fall within the letter of the law, and no exception being made in the statute as to the purpose of the killing, we must eat no more meat, whether "it maketh our brother to offend" or not. We are of the opinion that under the undisputed evidence in the case, the killing did not come within the character or description denounced by the statute, and the general charge should have been given for the defendant as requested.—*Commonwealth v. Lewis,* 140 Penn. 261; Bishop on Stat. Crimes, § § 1110, 1119, and notes citing authorities.

The above view which we have expressed renders it unnecessary to notice the other rulings by the court on the giving and refusal of charges. The judgment of the court is reversed and the cause remanded.