The defendant was charged by complaint with cruelty to animals under Alabama Code 1975, Section 3-1-12. After a nonjury trial, the trial court found the appellant guilty, fined him $500.00 and sentenced him to three months' hard labor.
 I
The defendant contends that the evidence is insufficient to support his conviction. There was no eyewitness to the crime and the State's case was based upon circumstantial evidence.
Mrs. Diane Maddox testified that around 3:30 P.M. on August 13, 1979, she drove to her mother's home in North Birmingham. Upon finding her mother not home, she went to the home of a neighbor, Mrs. Martin. Mrs. Martin's daughter told her about a puppy they had found. Mrs. Maddox then went to an alley located behind and between Mrs. Martin's home and the defendant's residence. There she found three puppies which had been burned and were dead and one live puppy which smelled of gasoline. Mrs. Maddox removed the dead animals from under a piece of plywood, placed them in a brown sack, and returned to Mrs. Martin's home with the puppies. Each of these four puppies had a long tail. Later that afternoon, Mrs. Maddox talked to the defendant's younger brother, Chris Anderton, and afterwards observed the remainder of the litter from which the dead animals had come. This litter was located underneath the defendant's residence. Mrs. Maddox stated that the three dead animals and the surviving puppy were of the same breed and age as those observed underneath the defendant's residence except that the four puppies found in the alley had longer tails than the others. The only evidence of a fire that she observed was the burned bodies of the animals. The surviving puppy had been burned around one of its ears. Mrs. Maddox called both the Birmingham Police and Humane Society.
Mrs. Judy Uptain, a resident in the defendant's neighborhood, testified that she and her mother heard a puppy crying and went to find it. In the alley behind the defendant's residence they found, under a piece of plywood, three dead puppies and one live puppy. The animals had been burned and Mrs. Uptain could smell gasoline on the surviving puppy. She testified that she knew that the defendant's dog had been pregnant. Shortly after finding the puppies, she observed the defendant's dog and it appeared to have recently had her litter. Mrs. Uptain left the dead animals in the alley and was informed by her sister that Mrs. Maddox had removed them.
Deputy Bill Carter of the Animal Cruelty Division of the Jefferson County Sheriff's Department testified that on the morning of August 14, 1979, he observed the dead animals in Mrs. Martin's yard and photographed them. He stated that they had been burned and had the odor of gasoline about them. After further investigation, Deputy Carter had a complaint and warrant of arrest sworn against the defendant.
Chris Anderton, the defendant's younger brother, was called by the State to testify as an adverse witness. He testified that in August of 1979, the defendant's dog gave birth to seven puppies. On the morning of August 13th, Mr. Anderton had a conversation with the defendant concerning the litter. He stated that the conversation was general in nature with no mention of the physical differences of the animals or the possibility of killing some of them. They also discussed the condition of the mother dog and her inability to feed the puppies. However, Mr. Anderton admitted that, at the defendant's trial in district court, he had testified that the defendant said he would drown some of the litter, although he did not mention which ones. He stated that when he talked to the defendant, he had seen the litter but had not seen the dead animals. *Page 1085 
Mr. Anderton also admitted that at the defendant's former trial he testified that he told Mrs. Maddox that defendant planned to kill the puppies with long tails. At trial Anderton denied that the defendant had made such a statement to him. He testified that he was extremely upset when he talked to Mrs. Maddox and did not realize that he had said such to her. He stated that, when he talked to Mrs. Maddox, he had not seen the dead animals.
Mr. Anderton testified that he saw the surviving puppy and noticed some burned areas on one of its ears. He stated that the unharmed portion of the litter had short tails. Mr. Anderton's testimony concluded the presentation of the State's case.
The State's case is clearly based upon circumstantial evidence. In Cumbo v. State, Ala.Cr.App., 368 So.2d 871, 874, cert. denied, Ala., 368 So.2d 877 (1978), we stated:
 "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. . . ."
(Citations omitted)
It is our duty upon appeal to determine whether any theory of the evidence exists from which the trier of fact could have excluded every hypothesis except guilt beyond a reasonable doubt. Since this case was tried without a jury, it was the trial judge's duty to decide whether or not the circumstantial evidence tending to connect the defendant with the crime excluded to a moral certainty every reasonable hypothesis other than that of the defendant's guilt. Cumbo, supra at 875.
The trial court had before it the following facts: (1) The defendant was the owner of an expectant dog, (2) the dog bore a litter of seven puppies, (3) the dead animals had long tails as opposed to the shorter tails of the unharmed puppies, (4) the dead animals were found in an alley behind the defendant's residence and near his backyard fence, (5) the unharmed puppies were of the same breed as those killed, (6) the surviving puppy had been burned, had the odor of gasoline about it, and was of the same breed as the dead and unharmed puppies, and, (7) on August 13th, Chris Anderton told Mrs. Maddox that the defendant planned to kill the long-tailed puppies.
Clearly the trial court, as the trier of fact, had sufficient evidence before it to reasonably infer that the defendant committed the crime. Consequently, it properly overruled the motion to exclude the State's evidence. See Scruggs v. State, Ala.Cr.App., 359 So.2d 836, cert. denied, Ala., 359 So.2d 843
(1978); Daniels v. State, Ala.Cr.App., 343 So.2d 566 (1977);James v. State, Ala.Cr.App., 339 So.2d 1047, cert. denied, Ala., 339 So.2d 1052 (1976); Bell v. State, Ala.Cr.App.,339 So.2d 96 (1976); and cases cited therein; 7 Alabama Digest Criminal Law 1159.2 (8).
 II
The defendant asserts that the complaint was vague, indefinite, did not provide a basis for a plea of former jeopardy and that his demurrer should have been granted.
Omitting the formal parts, the complaint reads:
 ". . . Steve Anderton did torture, torment or inflict unnecessary cruelty upon animals to-wit: by pouring an inflammable substance upon four (4) dogs after which causing the ignition of said inflammable substance resulting in death or injury to the aforementioned animals contrary to Code of Alabama (1975), 3-1-12 . . ."
The complaint substantially follows the language of the statute and approved in indictment form number five of Alabama Code 1975, Section 15-8-150. Under Section 15-8-23 this language is sufficient to apprise the defendant of the nature of the offense charged. *Page 1086 
The instant complaint differs from that in Abercrombie v.State, 8 Ala. App. 326, 62 So. 966 (1913), in that although the indictment there substantially followed the language of a predecessor to Section 3-1-12 it failed to allege, as one of its alternative charges, that the animal was "cruelly" killed. That defect rendered the indictment void as no offense under the statute was charged. This error is not present in the instant case as "cruelly" was specifically averred. See alsoHorton v. State, 124 Ala. 80, 27 So. 468 (1900); Pittman v.State, 18 Ala. App. 447, 93 So. 42 (1922).
The defendant was adequately apprised of the nature and cause of the offense with which he was charged. We find the complaint sufficient and the trial court's overruling of the defendant's demurrer to be without error.
 III
The defendant contends that the trial court erred in allowing the State to impeach Chris Anderton by use of prior inconsistent testimony given at the defendant's trial in district court.
The State called Mr. Anderton as a witness but requested that he be declared an adverse witness because he had stated to the prosecuting attorney that he would not testify against his brother. The defendant was not planning to call Mr. Anderton as a witness as he attempted to have him excused from testifying through a letter, admitted into evidence, from the witness's physician indicating that Mr. Anderton suffered from hypertension and nervousness. The trial court granted the State's request.
The prior testimony concerned the defendant's August 13th conversation with the witness. In the district court proceedings, Mr. Anderton stated that the defendant told him that he planned to drown some of the puppies. However, at trial, Mr. Anderton testified that the defendant did not say anything about killing some of the puppies.
In order to resolve the issue before us, we must examine the nature of an adverse or hostile witness in a criminal setting. The word "adverse" was first used in reference to witnesses in the Common Law Procedure Act, 1854, 17 and 18 Vict., C. 125, § 22:
 "A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character; but he may, in case the witness shall in the opinion of the judge, prove adverse, contradict him by other evidence, or by leave of the judge, prove that he had made at other times a statement inconsistent with his present testimony; but before such last-mentioned proof can be given, the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he has made such statement." (Emphasis added)
In Greenough v. Eccles, 141 Eng.Rep. 315 (1859), it was held that the word "adverse" meant hostile rather than unfavorable (one who gives evidence opposed to the interests of the party calling him). The word applied not to the testimony of a witness but rather to the witness itself. Consequently, the word characterized the nature and manner of the witness and not his testimony. See also Simpson, The Characterization of One'sWitness for the Purpose of Their Impeachment, 50 Austl.L.J. 410 (1976).
It is apparent that the application of this adverse witness rule must be guided by the sound discretion of the trial judge, who, after hearing the particular facts and circumstances of the issue, could best ascertain whether a witness was adverse or merely unfavorable to the party calling him. See generally Alabama Code 1975, Section 12-21-138; Fed.R.Evid. 607; ARCP 43 (b); 1 Underhill Criminal Evidence § 232 (3) (6th ed. 1973); 2 Underhill Criminal Evidence § 290 (5th ed. 1956).
The practical effect of characterizing a witness as adverse is to allow the party calling that witness to consider him as the witness of his opponent for purposes of examination. This allows the party calling the adverse witness to examine the witness by use of the tools available to him on cross *Page 1087 
examination including contradiction and impeachment.
In the instant case the witness was the defendant's younger brother, he resided at the same residence as the defendant, he did not wish to testify against the defendant and had indicated to the prosecuting attorney that he would not, and the defendant had attempted to have the witness excused from testifying and was not planning to call him as a witness. From the facts before us, we find no error in the trial court allowing the State to call Mr. Anderton as an adverse witness and to impeach his testimony by use of a prior inconsistent statement made at a previous trial of the same cause.
 IV
The defendant asserts that the trial court erred to reversal in allowing two prosecuting attorneys to examine one witness.
The State was assisted in the presentation of the case by a law student intern working with the district attorney's office. This intern was supervised by the assistant district attorney prosecuting the case. The defendant agreed to the intern's participation in the trial but objected when the Deputy District Attorney prosecuting the case requested and was granted permission to conduct the redirect examination of the defendant's brother after the intern had conducted the direct examination.
It is within the trial court's discretion to allow more than one counsel on a side to examine a witness. State v. Walker,281 Ala. 182, 200 So.2d 482 (1967); Roberts v. State, 258 Ala. 534, 63 So.2d 584 (1953); McKinley v. Campbell, 217 Ala. 139,115 So. 98 (1927); Smith v. Bachus, 195 Ala. 8, 70 So. 261
(1915); Jackson v. Tribble, 156 Ala. 480, 47 So. 310 (1908); Gamble, McElroy's Alabama Evidence § 121.03 (3rd ed. 1977). See generally Mallory v. State, 55 Ala. App. 82, 313 So.2d 203, cert. denied, 294 Ala. 765, 313 So.2d 208, cert. denied,427 U.S. 902, 96 S.Ct. 3185, 49 L.Ed.2d 1195 (1975); State RealtyCo. v. Ligon, 218 Ala. 541, 119 So. 672 (1929). We find no error in the trial court's ruling.
 V
Lastly, the defendant contends that the trial court erred in adding an ex parte statement to the record in his chambers after completion of the trial without his presence. The statement explains the basis for the trial court's rulings on the admission of the impeachment evidence of Chris Anderton and the denying of the defendant's motion to exclude the State's evidence. Both issues have previously been discussed and decided adversely to the defendant.
While the better practice is to require the presence of the defendant or his counsel if the trial court wishes to make an addition to the record, we see no prejudice in the comments and find no error to the substantial rights of the defendant.
We have searched the record as required by law and found no error prejudicial to the defendant. The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur.