Alford Weaver was indicted for the murder of Dennis Anthony Young, in violation § 13A-6-2, Code of Alabama 1975. Following a jury trial, the appellant was found guilty of manslaughter and sentenced to ten years' imprisonment in the penitentiary.
The only facts necessary for the resolution of this appeal are those that pertain to the testimony of witness Connie Payne and, therefore, only those facts will be discussed in this opinion.
During the presentation of the State's case-in-chief, the following statement was made, outside the hearing of the jury, by the assistant district attorney.
 "MR. HARRISON: Judge, the State's next witness will be Connie Payne. I did not know until after we had struck the Jury, and I am trying to remember now, either right before or right after opening statements that she would be available to us.
 "Miss Payne is the girlfriend of the Defendant Alfred Weaver in this case. She has made a statement to Mr. Copeland wherein certain representations were made or statements that were made by the Defendant to her.
 "I have talked to her today, and to be very blount, she does not like me. I'm a little bit too harsh for her. I don't know whether she is going to attempt to recant these statements or allege that they are in fact true statements, correct or what.
 "In any event, I would ask the Court's permission because of her relationship with the Defendant at this time, and it is my understanding that they are living together at this time, that she be called as a hostile witness or as a Court's witness, where I may give her certain leading questions to a limited extent." (R. 114-115)
Defense counsel objected to the above statement and replied, "I don't think there's a provision in the criminal procedure for calling a witness as a hostile witness." (R. 115).
Harrison then stated that the witness had spoken to Copeland a few hours earlier and she indicated that the statement she had given was true and correct. The reason Harrison sought to declare Payne as a hostile witness was because in the event she testified that the statement was incorrect, Harrison wanted the opportunity to impeach her.
The trial judge then stated the following:
 "Until the witness appears to be hostile, and at this point, there's nothing to me to indicate that this witness is hostile, nor nothing before me that would indicate that the witness would not tell the truth on the stand, and until such a situation were to occur from the witness stand, I would not be prone to declare the witness as a hostile witness to you, Mr. Harrison, nor would the Court be prone to declare the witness as a Court's witness." (R. 117-118).
Payne then took the witness stand and testified that she lives with the appellant. She related to the court that she and the appellant had discussed the shooting incident. During her direct examination, the following occurred:
 "Q. Did he say anything about a statement he had made to the police?
"A. No sir.
 "Q. Did he say anything about a weapon that the other boy, the boy that he was supposed to have shot, had?
 "A. I don't — I don't recall anything about that, no sir." (R. 123-124).
Following this testimony, Harrison, during a bench conference, told the trial judge that Payne's testimony was inconsistent with the signed statement she had previously made to Copeland and he wished to place Copeland on the stand to show these inconsistencies. The trial court declined to allow Copeland to testify on this issue and refused Harrison's second request to deem Payne as a "hostile witness". Harrison was permitted to attempt to refresh Payne's recollection with the statement.
Payne then testified that she remembered making a statement to Copeland on *Page 1039 
June 13, 1983, and that after she made the statement, Copeland read it back to her and she signed it. Harrison then gave her the statement, which she read, and then she acknowledged that it was the statement which she had given to Copeland.
Payne was then asked if she recalled the appellant's statement to her concerning the statement he made to the police about the shooting incident. She replied that she did not recall such a statement.
Payne was then asked if she had talked to Copeland earlier in the day and told him that the statement she gave to him on June 13 was true and correct. She replied that she did not recall telling Copeland the statement was true and correct but did tell him that she'd have to tell the truth on the witness stand.
At this point, Harrison requested a bench conference.
 "MR. HARRISON: Once again, I would ask the Court to declare her a hostile witness. I would ask to bring Mr. Copeland in here. She is living with the Defendant at this time. She is obviously biased towards the Defendant, has some feeling for the Defendant, and the statement — you have read the statement. It speaks for itself." (R. 129-130).
The trial judge then held a hearing on this issue outside the presence of the jury. During the hearing, Harrison made the following statement:
 "MR. HARRISON: Judge, the State has shown that she is obviously biased. She is living with the man. That she made the statement, and we are offering to show through Mr. Copeland that she has told us before we put her on the stand that she is going to testify that the statement when she made it on June 13th was the truth; that today is the truth, and she has got on the stand and has, is attempting to quibble about that. (R. 138).
The trial judge then allowed Harrison to ask Payne leading questions to demonstrate the inconsistencies between her testimony and her previous statement to Copeland.
 "Q. Is it not true that that statement says that the victim did not have a knife even though the Defendant told the police that he did?
"A. That's what this statement says.
"Q. And that's what you are saying is not true today?
"A. Yes sir, that's what I'm saying." (R. 146).
". . .
 "Q. What, if anything, did the Defendant say to you about David and Barbara?
 "A. I — he just said something about them after I asked him a question.
"Q. What did he say?
"A. Well, I asked him —
"Q. No ma'am. What did he say?
"A. He said that I didn't have to. I, well, like I.
 "Q. All you can say is what he said, ma'am. We have just got certain rules. What did he say?
 "A. That there was no need for me to talk to Barbara and David about it, because when they testified, if they told the truth, everything would be all right.
"Q. And that's not what that statement says, is it?
"A. No sir, that's not what the statement says.
 "Q. In fact, the statement says that he asked you to talk to them and to make sure that they would tell it his way, did it not?
"A. That's what the statement says.
 "Q. Okay, and that's the statement of June 13th that you gave to Mr. Copeland?
 "A. Yes sir, but that's not the way it was." (R. 151).
 I
The appellant asserts that the trial judge erred to reversal when he allowed the State to impeach its own witness, Payne, by using a prior inconsistent statement which she had given to Copeland. We do not agree. *Page 1040 
In Anderton v. State, 390 So.2d 1083 (Ala.Crim.App.), cert. denied, 390 So.2d 1087 (Ala. 1980), Judge Bowen, quoting from Common Law Procedure Act, 1854, 17 and 18 Vict., C. 125, § 22, stated:
 "A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character; but he may, in case the witness shall in the opinion of the judge, prove adverse, contradict him by other evidence, or by leave of the judge, prove that he had made at other times a statement inconsistent with his present testimony; but before such last-mentioned proof can be given, the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he has made such statement. (Emphasis added)."
Anderton, supra at 1086.
Therefore, according to the Adverse Witness Rule,[1] a party may impeach his own witness if the trial judge determines that witness to be "adverse".
 "The practical effect of characterizing a witness as adverse is to allow the party calling the witness to consider him as the witness of his opponent for the purposes of examination. This allows the party calling the adverse witness to examine the witness by use of the tools available to him on cross examination including contradiction and impeachment."
Anderton, supra at 1086-1087.
The State attempted numerous times, prior to and during the course of Payne's testimony, to have her deemed a "hostile"[2]
witness.
The decision to label a witness "hostile" or "adverse" is within the discretion of the trial judge and he must make this decision based on the facts and circumstances involved in each particular case. Anderton, supra. There must be some evidence before the trial judge which would allow him to determine that the witness is, in fact, hostile, before he can deem the witness as such. See Wiggins, supra.
 "The characterization of a witness as adverse or hostile is not dependent upon the unfavorable or `hostile' nature of his testimony, but rather upon the characterization of the nature and manner of the witness himself. Anderton v. State Ala.Cr.App. 390 So.2d 1083, cert. denied, Ala., 390 So.2d 1087
(1980); and authorities cited therein. It is a common occurrence that a witness may partially or totally answer questions unfavorably, propounded by the party calling him. Such would not immediately create the adverse or hostile situation requisite for the party to be given the use of the tools of cross-examination. It does not create a ground of hostility if a witness does not now testify to the same statement or statements which he had previously made. See generally. R. v. Smith, 2 Crim.App. 86 (1909)." (Footnote omitted).
Wiggins, supra at 782.
We hold that the trial judge properly allowed the State to impeach Payne by using her prior inconsistent statement. There is no doubt in this court's mind that Payne was a hostile witness. The determination of hostility did not result solely from her unfavorable testimony to the State but from her obvious bias for the appellant. Payne was the appellant's girlfriend and lived with him at the time of the trial just as she had for some time. Because of this relationship, Payne was clearly inclined to testify falsely against the State and in favor of the appellant. Therefore, the Adverse Witness rule was correctly applied in this case. *Page 1041 
The appellant goes to great lengths in his brief to contend that the State should not have been allowed to impeach Payne because it was not "surprised" by her testimony.
 "The party calling the witness need now show that he was surprised by the witness' testimony as a condition precedent to impeaching the witness under the Adverse Witness Rule. Nothing in the two decisions dealing with the rule even faintly suggests that such surprise is necessary. Indeed, in Anderton
the party that called the witness clearly was not `surprise'" (Footnotes omitted).
Gamble, [McElroy's Alabama Evidence] supra at 15.
There is no merit to the "surprise" argument and it is unnecessary for us to discuss whether or not the State was surprised by Payne's testimony.
Therefore, the second issue raised by the appellant on appeal is irrelevant.
 II
The appellant contends his motion for a mistrial should have been granted due to the improper remarks made by the State during closing arguments. The remarks about which the appellant complains were made in response to the testimony of Payne during her cross-examination by defense counsel.
The remarks made by the State concerned Payne's credibility and this was a proper subject for argument. Favor v. State,389 So.2d 556 (Ala.Crim.App. 1980). The scope of closing arguments is left to the sound discretion of the trial judge. There was no abuse of that discretion shown here.
 III
The appellant argues the trial judge should have given a limiting instruction to the jury that Payne's prior statement was to be used for only purposes of impeachment and not as substantive evidence. No such instructions were requested in writing by the appellant and, therefore, no error occurred by the failure of the trial judge to give those instructions. Ala. Code § 12-16-13 (1975); Allen v. State, 414 So.2d 989
(Ala.Crim.App. 1981), affirmed, 414 So.2d 993 (Ala. 1982).
For the reasons stated above, this cause is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.
[1] For an excellent discussion of this subject, see Gamble Howard and McElroy, The Turncoat or Chameleonic Witness. Use ofHis Prior Inconsistent Statement, 34 Ala. Law Rev. 1 (1983).
[2] In relation to the Adverse Witness Rule, "hostile" and "adverse" are used interchangedly. See Wiggins v. State,398 So.2d 780 (Ala.Crim.App.), cert. denied, 398 So.2d 783 (Ala. 1981); Moulds v. State, 426 So.2d 942 (Ala.Crim.App. 1982);Wyllie v. State, 445 So.2d 958 (Ala.Crim.App. 1983).