The plaintiffs appeal from a judgment entered on a jury verdict in favor of the defendants, Browning-Ferris Industries, Inc., and Eddie McMillan. The dispositive issue is whether the trial court abused its discretion in treating a deceased witness, whose deposition testimony was offered by the defendants, as an adverse witness subject to impeachment by evidence of prior inconsistent statements.
Dirt, Inc., operates a private landfill in Mobile County. Ray Castillow is employed by Dirt as a heavy equipment operator. Castillow is in charge of the area where the trash is dumped; he is also in charge of preventing anyone from scavenging through the trash for discarded items. The normal procedure at the landfill is for a truck filled with trash to dump the trash onto the ground, pull forward, and then back into the dumped trash in order to push the trash closer to a trench containing other trash. Dirt employees then use bulldozers and other heavy equipment to push the trash into the trenches and to cover the trash with soil.
On August 2, 1988, Browning-Ferris Industries, Inc. (BFI), sent a load of trash to Dirt's landfill. This load of trash included two-by-fours, boxes, tools, and other trash from a building supply company. Castillow was operating a bulldozer used for pushing trash into a trench, when Eddie McMillan drove the BFI truck to the area where the trash is dumped. At this point the evidence is in dispute as to what happened.
At trial, McMillan testified that Castillow motioned him to back his truck toward the trench. He said that he stopped his truck and got out; that he went to the rear of the truck to release a latch on the back of the *Page 45 
truck; and that he noticed Castillow sitting on his bulldozer about 15 feet or more away from the truck. McMillan claims that he then dumped the trash, pulled forward, and backed up to push the trash toward the trench; and then pulled forward again. By this time, the trash had pinned Castillow against his bulldozer.
Castillow testified that before McMillan began to dump his load of trash, McMillan backed the truck without turning his head to see what was behind him. Castillow said that he attempted to signal McMillan to stop but that McMilland continued to back his truck, unloading the trash. Castillow said the trash pinned him against his bulldozer. He said that after McMillan dumped the trash, he began to back his truck in order to push the trash toward the trench. Castillow said that this caused the lumber in the trash to be shoved against Castillow's legs.
Another employee of Dirt, John Albritton, was also present when the accident occurred. On the day of the accident, Albritton signed a statement prepared by BFI's personnel manager, stating that as McMillan was backing up Castillow jumped off his bulldozer to pick up something out of the pile of trash and that the trash fell on top of him. Albritton did not read the statement himself, but the personnel manager read it to Albritton before he signed it. Albritton allegedly also gave a tape-recorded statement to the insurance adjuster for Dirt's worker's compensation carrier on the day of the accident. In this tape recording, Albritton allegedly stated that Castillow had been directing McMillan as to where to dump the trash and that Castillow had gotten off his bulldozer to pick up something out of the trash when the trash fell on him.
On October 24, 1989, Albritton stated in a deposition that as he walked to where the trash was to be dumped, he saw Castillow on his bulldozer far away from the passenger side of McMillan's truck. Albritton stated that he walked to the driver's side of the truck and did not see Castillow again until he heard him screaming when the truck backed into the trash, pinning Castillow against his bulldozer. Albritton stated that the written statement taken by BFI's personnel manager had been written by the manager and then read to him. Albritton was shown the written statement at the deposition and said that it was not correct. Albritton stated that he never said that the accident occurred after Castillow had gotten off his bulldozer to pick up something out of the trash. At the deposition, Albritton was not confronted with the prior inconsistent statements he had allegedly made in the tape recording made by the insurance adjuster.
Albritton had died before the trial. The defendants offered Albritton's deposition as testimony of an adverse witness, and the trial court determined that Albritton was an adverse witness. The trial court allowed the adjuster and the personnel manager to testify as to the prior statements made by Albritton in order to impeach Albritton's testimony.
The general rule in Alabama is that when a party places a witness on the stand, he vouches for the witness's credibility and cannot impeach his own witness. Holloway v. Robertson,500 So.2d 1056 (Ala. 1986). However, a party may impeach his own witness if the trial court determines that the witness is hostile. Holloway, 500 So.2d 1056; Weaver v. State,466 So.2d 1037 (Ala.Crim.App. 1985) (girlfriend who lived with the defendant at the time of trial correctly found to be an adverse witness). Whether to label a witness as adverse is within the discretion of the trial court and the decision must be based upon the particular facts and circumstances of the case.Holloway, 500 So.2d 1056. "There must be some evidence before the trial judge which would allow him to determine that the witness is, in fact, hostile, before he can deem the witness as such." Weaver, 466 So.2d at 1040.
 "In Greenough v. Eccles, 141 Eng.Rep. 315 (1859), it was held that the word 'adverse' meant hostile rather than unfavorable (one who gives evidence opposed to the interests of the party calling him). The word applied not to the testimony of a witness but rather to the witness itself. *Page 46 
Consequently, the word characterized the nature and manner of the witness and not his testimony."
Anderton v. State, 390 So.2d 1083, 1086 (Ala.Crim.App.), cert. denied, 390 So.2d 1087 (Ala. 1980).
It is not uncommon for a witness to partially or totally answer unfavorably the questions asked by the party calling him. This situation does not "immediately create the adverse or hostile situation requisite for the party to be given the use of the tools of cross-examination." Wiggins v. State,398 So.2d 780, 782 (Ala.Crim.App.), cert. denied, 398 So.2d 783 (Ala. 1981). "It does not create a ground of hostility if a witness does not now testify to the same statement or statements which he had previously made." Id.
In the instant case, we hold that the trial court abused its discretion in determining that Albritton was an adverse witness. There was no showing of actual hostility by Albritton against BFI or McMillan. The fact that Albritton was Castillow's coemployee does not alone necessarily mean that he would testify falsely against BFI and McMillan. In fact, the record indicates that Albritton had also worked with McMillan for at least five years, because McMillan had frequently stopped at the landfill. Albritton had also stated that the only relationship he had with Castillow or with McMillan was work-related.
It is apparent from the record that the trial judge based his decision to call Albritton an adverse witness on Albritton's prior inconsistent statements. Clearly, the word "adverse" applies to the witness himself and not to his testimony. The simple fact that a witness's statements at trial are not the same as those previously made does not create adverseness.
Assuming, arguendo, that the trial court correctly determined that Albritton was an adverse witness, then, nevertheless, we would conclude that the court erred in allowing the insurance adjuster to testify as to Albritton's prior inconsistent statements. In his deposition, Albritton was never confronted with the prior tape recorded statement he had allegedly given the insurance adjuster.
 "A witness who testifies by deposition may not be impeached by proof of his having made a statement contradictory of his testimony in the deposition unless, at the taking of the deposition, a predicate was laid by calling the witness' attention with reasonable certainty to the time, place, person involved and supposed contradiction. . . ."
C. Gamble, McElroy's Alabama Evidence § 157.02(1) (4th ed. 1991) (footnote omitted); see also Simon v. Wyler, 222 Ala. 91,130 So. 778 (1930). Clearly, the trial court abused its discretion in allowing the insurance adjuster to testify as to Albritton's prior statements.
All other issues presented on appeal are without merit.
Based on the foregoing, we reverse the judgment and remand the cause for a new trial.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.