(125 So. 802)
LEWIS et al. v. STATE. (1 Div. 558.)

Supreme Court of Alabama. Jan. 23, 1930.

462

Charlie C. McCall, Atty. Gen., and J. W. Brassell and Wm. P. Cobb, Asst. Attys. Gen., for the State.

SAYRE, J. Defendants, appellants, were convicted of murder in the first degree and sentenced to imprisonment for life. The theory of the state was that deceased, Christopher C. Coffee, of Mobile, having left his companions at a hunting camp and walking alone through the woods, was, to state the matter very briefly, by Percy Lang, since deceased, and these defendants killed, robbed, and his body burned. There was evidence going to show that persons afterwards engaged in hunting for Coffee, and ignorant of his fate, were directed by a witness, who had seen a part of the transaction which resulted in Coffee's death, to a place in the woods where, in or under a "fire heap," they found unconsumed fragments of bone and clothing, trinkets, and articles identified as having been worn by the deceased. The court refused to defendants the charge which we have marked A on the margin of page 39 of the record. In this there was no error. It was, of course, incumbent upon the state to prove the guilt of the defendants beyond a reasonable doubt. But this rule of proof is predicated of the issue of guilt upon consideration of the evidence as a whole and of such parts of it as were indispensable to a verdict of guilt. Outside of the circumstance just here under consideration—i. e., the "fire heap" and its contents—there was ample evidence to establish the corpus delicti and the criminal responsibility of

Quincey W. Tucker, of Grove Hill, and Woodford Mabry, of Foley, for appellants.

these defendants. The charge in question was misleading in more than one respect and was refused without error.

■ Charge B was contradictory of itself, misleading, and refused without error.

■ The proposition of charge C is untenable. The state produced an eyewitness of the killing, and upon his testimony, if accepted by the jury, a conviction was proper, even though the body of the deceased had been completely destroyed.

■ The state put in evidence confessions made, as the witnesses testified, by defendant Carson Lewis, to officers of the law having him in custody during the progress of his removal from the jail at Chatom, in Washington county, to Kilby prison. Proper predicate was laid, and was not, so far as the record discloses, questioned by any of the defendants. At a later stage of the trial evidence was offered to prove a similar confession by the same defendant to a deputy sheriff of Washington county, while the defendant was in his custody. Here also, as the bill of exceptions recites, "the predicate was properly laid." Both the confessions to which we have referred included statements of fact connecting these defendants with the killing of the deceased, and, besides, both related to the finding of a coin, a safety pin, some large shoe eyelets, a finger ring, and some fragments of bone, identified—except as to the fragments of bone—as similar to articles upon the person of deceased when he left the hunting camp, which articles were found under a "fire heap" to which defendant Carson Lewis conducted the deputy sheriff after said defendant had been taken into custody and charged with complicity in the death of the deceased, Coffee. The court, on motion of the defendant and addressed to the entire confession, excluded that part of it made by the defendant to the deputy sheriff at Chatom, where the said defendant was in jail—this because the deputy testified in the same connection, but at a later stage of his examination, that he had told defendant Lewis that "it would go lighter with him if he confessed." In so much of the court's ruling as kept before the jury the fact of the defendant's disclosure of the whereabouts of the "fire heap," the articles found there, and the statements thus made, there was no error. Lowe v. State, 88 Ala. 8, 7 So. 97; Owens v. State, 215 Ala. 45, 109 So. 109.

■■ As affecting the admissibility of these confessions, as we suppose, counsel for defendants asked Carson Lewis on his examination as a witness, "At any time after your arrest and prior to your confession with reference to these articles that you had seen there"—the articles had been exhibited to the defendant witness by one of the officers having him in charge while on the way to Kilby—"and within a short time before then, were you whipped?" If, after receiving testimony going to show a confession, it is shown that the confession was procured by threats or promises sufficient to show its lack of voluntary character, the evidence of such confession should be excluded from the jury. Bonner v. State, 55 Ala. 246, where other cases are cited. But that rule can have no operation in this case, for the reason that no proper correlation between the confessions and the whipping (if any) inquired about, and, in the next place, the apparent purpose of the question was to eliminate the evidence as to the "articles" found in the "fire heap," which, as we have seen, furnished corroborative evidence requiring the admission of the confessions, even though induced by threats or promises, thus differentiating this case in a material respect from Bob v. State, 32 Ala. 560, and Mose v. State, 36 Ala. 226, and the other cases cited in the brief for appellants.

■ A long-handled axe was admitted in evidence, on which were stains described in the evidence as blood splotches and to the head of which white hairs about one inch and a half long adhered. Deceased was more than 70 years of age and his hair was white. This axe was found at the house of defendant Carson Lewis by a deputy sheriff shortly after the killing. The witness Will Lewis had testified that, looking through some bushes, he had seen the killing, that Carson Lewis took a part in it, and that "it looked like Carson Lewis had an axe, and that, as well as he could see through the bushes, it was a long-handled axe." There had been no expert examination of the stains. Nevertheless, this testimony was properly admitted to the jury for what it **was** worth.

■ Nor had there been any expert examination of the fragments of bone found under the "fire heap," by which to ascertain whether they were human bones. Still, the testimony concerning them and the place where they were found, along with the pieces of metal, similar at least to articles of that kind which deceased had upon his person when he left the hunting camp, and other testimony to the effect that the body of deceased had been burned at that place—though some unconsumed fragments had been thrown into the lake near which the "fire heap" was found—this evidence justified and required that ruling of the court which admitted the fragments of bone in evidence.

The court has found in the record no sufficient ground for a judgment of reversal.

Affirmed.

THOMAS, BROWN, and FOSTER, JJ., concur.