Larry McCall was convicted for the capital murder of Adam Lilly and sentenced to life imprisonment without parole. We are in full accord with the finding of the trial judge that "the killing of Adam Lilly was a pitiless and totally amoral act committed for the basest of human motives." Our review convinces us that McCall's conviction should be affirmed.
 I
McCall contends that his statements to the police were taken in violation of his constitutional rights and should not have been admitted into evidence.
McCall was arrested on November 2, 1983. He made four statements to the Mobile police.
Initially, he told the police that he had an alibi and that he did not know anything about the murder. This volunteered statement was made by McCall after he had been advised ofMiranda rights and while he was being transported to the police station for questioning.
McCall made a second statement upon being interrogated after his arrival at the *Page 498 
police station. After again being advised of hisMiranda rights by Mobile Police Detective John Boone, McCall initially invoked his right to counsel:
 "Question [Sgt. Boone]: I got a tape player going right here to record everything that's said in this room.
 "Answer [McCall]: Oh, I'll talk when my lawyer come. Whenever, you know.
 "Q. All right. You don't want to make a statement 'til your lawyer comes?
"A. That's the only time.
 "Q. Well, I thought you said earlier you wanted me to help verify where you were — where you was when Adam was killed.
"A. Yeah, I told you that.
"Q. All right.
 "A. Can't nobody do that but his brother and Harry. I told you from the jump [start].
"Q. Well that's what I want to —
"A. Yeah.
 "Q. — try to find out about now, as to who to get and how to contact them and so forth, so we can — 'cause we can prove guilt as well as innocence.
"A. Okay.
 "Q. But I can't talk to you now, if you want your lawyer here. I can't talk to you. You — you want to talk about your lawyer — without your lawyer? You can, but if you tell me you don't want to talk, I got to quit talking to you.
"A. Uh huh.
"Q. Now, if you want to talk about Harry?
 "A. Well, I going to tell you the same thing I'm going to tell my lawyer comes.
"Q. Well, do you want to tell me?
"A. Yeah. I'll tell you the same thing."
McCall then told Sergeant Boone that he had been with Harry Lilly, Adam Lilly's brother, that he did not know who killed Adam but that he had heard "street talk" and rumors that "it was three or four different guys,", naming Huey Broadus, Lija Williams, David Williams, and himself. This second statement was not introduced by the State at trial. McCall was then placed in the city jail in the same cell with David Vaughn, who had been arrested for robbery and was awaiting trial. McCall and Vaughn were longtime friends.
Sergeant Boone had talked to Vaughn about the Lilly murder on October 20, 1983, upon receiving information that Vaughn might have been involved. Boone testified that, upon his request, Vaughn stated that he was not involved, but that he might "possibly" be able to provide information about the murder in exchange for help on his bond and the bond for Willie Eugene Hardy, also awaiting trial on the robbery. Vaughn testified that it was Sergeant Boone's suggestion to get his bond reduced in exchange for information about Lilly's death.
Sergeant Boone also talked to Vaughn on October 27th and showed him the bonds which he had gotten reduced. Boone stated that Vaughn told him that McCall and Robert Seltzer were the ones that had killed Adam Lilly, and that McCall had admitted this fact to him. Vaughn refused the bonds stating that he wanted to remain in jail, apparently out of fear of retaliation for having given this information.
Both Vaughn and Sergeant Boone denied that Vaughn was acting as a law enforcement agent in procuring statements from McCall. There was no testimony that McCall and Vaughn had been placed in the same cell so that Vaughn could obtain information from McCall.
Vaughn testified that on the morning of November 3, 1983, McCall attempted to telephone the police and talk to Sergeant Boone. When he failed, McCall asked Vaughn to call for him. Vaughn telephoned Sergeant Boone and told him that McCall wanted to talk to him. This initiated McCall's third statement.
With Vaughn present at McCall's request, Sergeant Boone again advised McCall of his Miranda rights. McCall then waived his rights and told Sergeant Boone and Sergeant Wilbur Williams, the officers investigating the Lilly murder, that Robert Seltzer had "knocked a man off" but that he did not know who the "triggerman" *Page 499 
was, and that a .30-06 or a .30-30 caliber gun had been used.
Sergeant Boone told McCall that he "thought that most of what he [McCall] was saying was not true. And that telling lies was not the right thing to do." Sergeants Boone and Williams then left the room to decide what to do next. Boone testified that before he left the room he "observed David Vaughn shaking his head, and David Vaughn stated to me, 'I want to talk to him alone a few minutes,' and I asked Larry if he wanted to talk to David, and he stated that he did."
The officers remained outside the room for "about three to five minutes." When they returned, McCall stated that he wanted to "tell the truth," and that he wanted Vaughn to remain with him. After again being advised of his Miranda rights, McCall made his fourth statement.
In direct contradiction of the State's evidence that the statements were intelligently, knowingly, and voluntarily given, McCall testified that his statements were the result of threats, coercion, and physical torture.
On appeal, McCall argues that his statements were inadmissible because they were taken in violation of his right to counsel in direct violation of Edwards v. Arizona,451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), because he was represented by counsel but was questioned without counsel present, and because Vaughn "was the police's agent, planted by Detective Boone in the same jail cell, to solicit involuntary and coerced statements from the Appellant in regards to the Lilly case." Appellant's brief, p. 49.
Unquestionably, McCall's first statement was volunteered and not in response to any police questioning. "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602,1630, 16 L.Ed.2d 694 (1966).
Since the second statement was introduced by McCall and not by the State, its admission does not constitute ground for error. Any error in admitting the other statements was cured when McCall voluntarily took the witness stand at trial in his own defense and admitted giving the first, third, and fourth statements, which had already been introduced by the State, and introduced the second statement which had not been placed before the jury. "A defendant cannot complain of the admission of improper evidence when he himself has testified to the same facts." Lewis v. State ex rel. Evans, 387 So.2d 795,807 (Ala. 1980); Yelton v. State, 294 Ala. 340, 342,317 So.2d 331 (1974). "[T]he introduction of evidence of confessions should not work a reversal where the defendants had taken the stand and given testimony substantially in the language of the confessions." Boulden v. State,278 Ala. 437, 452, 179 So.2d 20 (1965); Chandler v. State,283 Ala. 29, 33, 214 So.2d 306 (1968). "Even though there may have been error in admitting an admission or confession, such error is cured or rendered harmless by the defendant's own testimony which is substantially in the language of the confession or admission." Romine v. State,384 So.2d 1185, 1188 (Ala.Cr.App.), cert. denied, Ex parteRomine, 384 So.2d 1188 (Ala. 1980).
McCall cannot be permitted to introduce evidence of an allegedly inadmissible statement, where the prosecution had made no reference to such statement before the jury, and then claim that its admission prejudiced his trial. "An accused cannot by his own voluntary conduct invite error and then seek to profit thereby. It would be a sad commentary upon the vitality of the judicial process if an accused could render it impotent by his own choice." Aldridge v. State,278 Ala. 470, 474, 179 So.2d 51 (1965). Error cannot be predicated upon the admission of a statement introduced and put in the record by the defendant himself. Truex v. State,282 Ala. 191, 192, 210 So.2d 424 (1968). "Sometimes called the doctrine of invited error, the accepted rule is that where the injection of allegedly inadmissible evidence is attributable directly *Page 500 
to the action of the defense, its introduction does not constitute reversible error." United States v. Taylor,508 F.2d 761, 763 (5th Cir. 1975).
Additionally, although we reach no conclusion one way or the other on the question, we are not convinced that McCall's second statement was taken in violation of the Edwards v.Arizona rule that when a suspect has requested counsel the interrogation must cease unless the suspect himself initiates the conversation. Although interrogation may not continue, the police legitimately may inquire whether the suspect has changed his mind about speaking to them without an attorney. Mouldsv. State, 429 So.2d 1176, 1178 (Ala.Cr.App. 1983). "Miranda does not erect 'an absolute per se
bar on any conversation with the accused by investigating officers after the former has requested counsel. It only inhibits investigative interrogation related to the specific crime itself.' United States v. Grant, 549 F.2d 942,946 (4th Cir.), cert. denied, 432 U.S. 908, 97 S.Ct. 2955,53 L.Ed.2d 1081 (1977)." Dunkins v. State,437 So.2d 1349, 1352 (Ala.Cr.App.), affirmed, Ex parte Dunkins,437 So.2d 1356 (Ala. 1983), cert. denied, 465 U.S. 1051,104 S.Ct. 1329, 79 L.Ed.2d 724 (1984). "When police stop interrogation as required, admissions that later come at the initiative of a suspect are subject to the traditional analysis for voluntariness. * * The same principle governs when, as here, a suspect who has been informed of his rights expresses both a desire for counsel and a desire to continue the interview without counsel. Where the suspect's desires are expressed in such an equivocal fashion, it is permissible for the questioning official to make further inquiry to clarify the suspect's wishes." Nash v. Estelle, 597 F.2d 513, 517
(5th Cir.), cert. denied, 444 U.S. 981, 100 S.Ct. 485,62 L.Ed.2d 409 (1979).
McCall's third and fourth statements were properly admitted into evidence. "The fact that a defendant has an attorney does not mean, as a per se rule, that law enforcement officials may not question the defendant without prior notice to or consent from the attorney." Eakes v. State, 387 So.2d 855, 860
(Ala.Cr.App. 1978). A suspect's retained counsel's consent or presence need not be obtained for a preindictment custodial interrogation of the suspect. Moran v. Burbine, ___ U.S. ___, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).Miranda does not create "an undifferentiated right to the presence of an attorney that is triggered automatically by the initiation of the interrogation itself." Burbine,0 ___ U.S. at ___, n. 4, 106 S.Ct. at 1147, n. 4. Here, the interrogation sessions took place before the initiation of adversary judicial proceedings and McCall's Sixth Amendment right to counsel had not attached. Burbine, ___ U.S. at ___, 106 S.Ct. at 1145.
Both Sergeants Boone and Vaughn specifically denied that Vaughn was acting as a police agent in obtaining information from McCall or in urging McCall to confess. Only speculation will support the finding of a prearranged plan between Boone and Vaughn to obtain information from McCall.
However, even if Vaughn had been acting as an undercover agent, McCall's third and fourth statements would still have been admissible because his Sixth Amendment right to counsel had not yet attached. Maine v. Moulton, ___ U.S. ___, ___ n. 16, 106 S.Ct. 477, 490 n. 16, 88 L.Ed.2d 481, 499 n. 16 (1985); Burbine, ___ U.S. at ___, 106 S.Ct. at 1146
(1985); Burton v. State, 107 Ala. 108, 18 So. 284, 288
(1895). "Alabama holds with this general rule that a confession is not inadmissible merely because it was induced by a trick or misrepresentation which was not reasonably calculated to lead the accused to confess falsely." C. Gamble, McElroy'sAlabama Evidence § 200.07(7) (3rd ed. 1977), citingFincher v. State, 211 Ala. 388, 100 So. 657, 662
(1924).
Under the circumstances of this case, we find no violation of either McCall's Fifth Amendment rights or of his Sixth Amendment right to counsel with regard to statements one, three, and four. Although the evidence of voluntariness was conflicting, *Page 501 
the trial judge's determination is supported by substantial evidence and is therefore entitled to great weight.Williams v. State, 461 So.2d 834, 838 (Ala.Cr.App. 1983), reversed on other grounds, Ex parte Williams,461 So.2d 852 (Ala. 1984). The admission of McCall's second statement was not error because it was introduced into evidence by the defense.
 II
David Vaughn testified in the prosecution's case in chief as the court's witness and the prosecution was allowed to impeach his trial testimony with prior inconsistent statements. McCall contends that this was error.
Vaughn testified at the hearing on the motion to suppress McCall's statements. After his testimony, the prosecutor, "as an officer of the court," informed the court that Vaughn "told untruths during his cross-examination" by defense counsel. Sergeant Boone then testified to what Vaughn had told him and stated that on October 27, 1983, Vaughn "made it clear to me that he was willing to go to the penitentiary on his robbery case before he would take the stand and testify against Larry McCall." The prosecutor represented to the trial judge that Vaughn "has stated numerous times he is in fear for his life" and that McCall had "attempted to persuade him to fabricate his testimony and go along with the version that the police had tortured him [McCall], Larry admitting that that was a lie." At that point, defense counsel moved to suppress Vaughn's testimony "because, obviously, he's lied." The prosecutor requested that Vaughn be called as a court's witness.
During Vaughn's testimony, defense counsel renewed their motion to exclude his testimony because "he just continuously lies." The trial judge responded, "Well, I know, but I'm going to have him — him an attorney if we continue on like this." The judge allowed Vaughn to consult with his attorney because "some of the answers he may give may be incriminating." After conferring with his own attorney, Vaughn elected to testify against counsel's advice.
After Vaughn testified, defense counsel, for a third time, moved "to strike his testimony 'cause there's a tissue of lies all the way through." During this time the trial judge had placed Vaughn under a "material witness bond" of $5000 at the request of the State.
Before Vaughn was called to testify at trial before the jury, the prosecutor renewed his request that Vaughn be called as a witness of the court. The Deputy District Attorney informed the trial judge that, after Vaughn had finished testifying on the motion to suppress, he told a deputy that "if he were called by — back up, he might just forget everything." The trial judge granted this motion "all things considered," and Vaughn was called as a court's witness.
"It is recognized by good authority that the court in its sound discretion may introduce witnesses in a criminal case, though they are not offered by either the State or Defendant, especially so as to expert witnesses, originally regarded as 'amici curiae,' from the earliest period." Hunt v.State, 248 Ala. 217, 224, 27 So.2d 186 (1946) (expert witness called). "It is within the sound discretion of a trial judge, in the interest of truth and justice, to call to the stand and examine, or permit to be examined by both parties, any witness who may be able to shed light upon the issues, the court being careful to preserve an attitude of impartiality."Anderson v. State, 35 Ala. App. 111, 117, 44 So.2d 266
(1950) (bank cashier called over defense counsel's objection). Relying on Hunt and Anderson, our Supreme Court, in Kissic v. State, 266 Ala. 71, 74-75,94 So.2d 202 (1957), held that it is within the discretion of the trial court to call a witness who is believed to be hostile to the prosecution and permit cross-examination by both the State and the defense. There the court held that there was no abuse of discretion in calling the ex-wife of the deceased, who was also the defendant's sister, and the deceased's nine-year-old son as court's witnesses *Page 502 
and in permitting them to be cross-examined by each side.
In Moulds v. State, 426 So.2d 942, 946 (Ala.Cr.App. 1982), this Court held that the trial court did not abuse its discretion in having an apparent accomplice "declared a court's witness, or in effect a witness adverse to the prosecution, when it became apparent that . . . [the accomplice-witness] was reluctant to testify." In Lewis v. State,414 So.2d 135, 138 (Ala.Cr.App.), cert. denied, 414 So.2d 140 (Ala. 1982), this Court held that the trial court did not err in granting a prosecution's request to declare a witness a court's own witness where that witness was the defendant's fiance and had a role in concealing evidence of her father's killing. See also Wiggins v. State, 398 So.2d 780, 783
(Ala.Cr.App.), cert. denied, 398 So.2d 783 (Ala. 1981) (no abuse of discretion in refusing defense request to have one of its witnesses declared a court's witness where "the witness apparently had no connection or relationship with the appellant either casually, socially, or otherwise" and the record did not reflect "any animosity or ill feelings between the witness and the appellant" and did "not indicate, other than through the statements of appellant's attorney, that the witness was testifying differently from that which the appellant expected"); Lawrence v. State, 57 Ala. App. 639, 642,331 So.2d 284 (1976) (following and stating general rule that "while it seems that it is within the discretion of a trial judge to honor a request by the defendant that a person be called as the court's witness, attempts to predicate error on a refusal by the trial court to grant such a request have been uniformly unsuccessful"); Helton v. State, 55 Ala. App. 428,435, 316 So.2d 355 (1975) (no error in refusal to grant defense request to call witness as court's own witness where defense did not establish through voir dire examination of witness that witness was adverse, hostile, or would make contradictory statements); McCullough v. State,40 Ala. App. 309, 314, 113 So.2d 905, cert. denied, 269 Ala. 598,113 So.2d 912 (1959) (request that previously convicted and sentenced codefendant be called as court's witness because he "would be a reluctant witness" addressed to trial judge's sound discretion). See also Anderton v. State,390 So.2d 1083, 1086-87 (Ala.Cr.App.), cert. denied, Ex parteAnderton, 390 So.2d 1087 (Ala. 1980).
Here, we find no abuse of the trial judge's discretion.
 III
McCall testified at the suppression hearing and at trial that Detectives Boone and Williams hit him on the hand with a closed pocket knife, threatened to hang him, subjected him to "police brutality," and "gigged" him in his side with the knife.
The defense attempted to show that "some eight or nine years ago" Detective Williams was among those police officers who "strung up" a black man named Diamond and told him they were going to hang him unless he confessed; that a police department investigation resulted in a recommendation that Williams be discharged; that Williams' actions resulted in a "federal court criminal and civil trial"; and that the City of Mobile paid damages to Mr. Diamond.
The defense also attempted to introduce evidence that Detective Boone "had been investigated for conduct against black citizens of this community, and that the Police Department Inquiry Board recommended his dismissal for that." This evidence was offered to "substantiate the statements of this Defendant [McCall] that he was mistreated in a manner that's consistent with prior conduct of both officers." Prior to trial, this evidence was admitted "for the record" and made the basis of McCall's motion to dismiss the indictment on the basis of "prosecutorial/establishment misconduct."
We find no abuse of the trial judge's discretion in refusing to allow McCall to present this evidence to the jury. Cf.Ex parte Cofer, 440 So.2d 1121 (Ala. 1983), holding that a single rape which occurred ten years prior to the offense charged was too remote to be probative of the issue of intent in a prosecution for sexual abuse. *Page 503 
"A trial court should receive and hear any pertinent testimony offered by the accused tending to show that the confession was not voluntarily made." Harris v. State,280 Ala. 468, 471, 195 So.2d 521 (1967). See also Smith v.State, 291 Ala. 507, 509, 282 So.2d 907 (1973); Whitev. State, 260 Ala. 328, 329, 70 So.2d 624 (1954) ("the court should receive and hear any testimony offered by the defendant tending to show that they were not voluntarily made").
Evidence that the police "had always been in the habit" of physically abusing suspects in order to obtain a statement would be admissible to show that the confession was coerced.Spence v. State, 17 Ala. 192, 197-98 (1850) (evidence that master had always been in the habit of tying his slaves when they were charged with any matter, and whipping them till they confessed the truth, and that he had frequently treated the defendant the same way was admissible without the "least doubt" to show that the defendant had reasonable ground to apprehend from his former treatment that he was to be whipped and have confessions extorted from him, as the master was in the habit of doing).
However, the offered evidence must have some relation to the confession. Lewis v. State, 220 Ala. 461, 463,125 So. 802 (1930) ("no proper correlation between the confessions and the whipping").
"The evidence offered must be relevant and material." 23 C.J.S. Criminal Law § 836 at p. 253 (1961), citingLewis v. State, supra. See also Redwine v.State, 258 Ala. 196, 199, 61 So.2d 724 (1952). "The determination of the relevance of evidence bearing on voluntariness and its admissibility for that purpose rests within the sound discretion of the trial court in the first instance. This court will not reverse the trial judge on a discretionary matter except for an abuse of discretion which affirmatively appears to have affected the substantial rights of the party complaining." State v. Duncan,221 Kan. 714, 562 P.2d 84, 92 (1977). See also United States v.Smith, 638 F.2d 131, 133 (9th Cir. 1981) ("The evidence of the family members and friends was properly excluded as irrelevant."); Morrison v. State, 398 So.2d 730,744-45 (Ala.Cr.App. 1979), reversed on other grounds, Exparte Morrison, 398 So.2d 751 (Ala. 1981).
Evidence of similar facts or other offenses to show system, scheme, plan or habit must be relevant to be admissible.Garner v. State, 269 Ala. 531, 533, 114 So.2d 385
(1959). "Stated another way, the State is not permitted to give in evidence other crimes alleged to have been committed by the defendant unless they are so connected by circumstances with the particular crime charged as that proof of one fact with its circumstances has some bearing on the issue on trial other than to show in the defendant a tendency or disposition to commit the crime with which he is charged." Garner,269 Ala. at 533, 114 So.2d 385.
 "Where, however, extrinsic acts are admitted to show a common plan, scheme, or design, the meaning and nature of the 'similarity' requirement is different. In this context, evidence of the 'other act' is admissible only if it is 'so linked together in point of time and circumstances with the crime charged that one cannot be shown without proving the other.' [U.S. v.] Beechum, 582 F.2d [898] at 912 n. 15 [5th Cir. 1978]; United States v. Broadway, 477 F.2d 991 (5th Cir. 1973). Courts have admitted extrinsic act evidence to show a defendant's design or plan to commit the specific
crime charged, but never to show a design or plan to commit 'crimes of the sort with which he is charged.' United States v. Goodwin, 492 F.2d 1141, 1153 (5th Cir. 1974) (emphasis in original). Thus, proof of design or plan by showing the commission of similar acts requires more than
 "merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations. Thus, *Page 504 
where the act of passing counterfeit money is conceded, and the intent alone is an issue, the fact of two previous utterings in the same month might well tend to negative intent; but where the very act of uttering is disputed — as, where the defendant claims that his identity has been mistaken — and the object is to show that he had a general system or plan of working off a quantity of counterfeit money and did carry it out in this instance, the fact of two previous utterings may be in itself of trifling and inadequate significance.
 "Goodwin, 492 F.2d at 1153 (quoting 2 J. Wigmore, Evidence § 304, at 202-03) (emphasis in original)." United States v. Dothard, 666 F.2d 498, 502 (11th Cir. 1982).
We find no error in the exclusion of the prior misconduct of the officers on the issue of the voluntariness of McCall's statements. Even if the prior conduct of the officers is considered relevant, the trial judge could have properly excluded it on the grounds (1) that it was too remote,Smitherman v. State, 33 Ala. App. 316, 318-19,33 So.2d 396 (1948); (2) that it would confuse or multiply the issues in the minds of the jurors, C. Gamble, McElroy's AlabamaEvidence § 21.01(3) (3rd ed. 1977); or (3) that it would serve comparatively little or no purpose except to arouse the passion, prejudice or sympathy of the jury.McElroy at § 21.01(4).
 IV
The evidence was sufficient to support McCall's conviction on each count of the indictment.
Count one charged a murder done pursuant to a contract for hire in violation of Alabama Code 1975, § 13A-5-40(a)(7); specifically, that "McCall would be paid . . . approximately one thousand dollars, . . . by or at the direction of one Joseph Washington, Sr., and other persons whose identities are presently unknown . . . in exchange for causing the death of Adam Lilly."
Count two charged a murder when the victim is subpoenaed in violation of § 13A-5-40(a)(14); specifically, that McCall killed Lilly, "the said Adam Lilly having been subpoenaed to testify on behalf of the State of Alabama in the criminal trial of State of Alabama vs. Joseph Washington, Jr., . . . and the aforesaid murder did stem from, was caused by, or was related to the capacity or role of Adam Lilly as a witness in said criminal trial, to-wit: the purpose of causing the death of Adam Lilly being to prevent him from testifying on behalf of the State . . . in said criminal trial."
Count three charged a murder for a pecuniary or other valuable consideration in violation of § 13A-5-40(a)(7); specifically that the murder was done by McCall for $1,000 "from a source or sources unknown."
The trial court entered a written order pursuant to Alabama Code 1975, § 13A-5-47(d), in sentencing McCall to life without parole. Below is set out the portion of that order relevant to the sufficiency of the evidence issue:
 "Pursuant to § 13A-5-47(d) of the Code of Alabama (1975), the Court makes the following findings of fact:
 "On June 14, 1983, the Defendant and his accomplice, one, Robert Lee Seltzer, lured the victim, Adam Lilly, to the environs of Big Creek Lake in Mobile County, Alabama, for the purpose of killing him. The Defendant shot and intentionally killed Adam Lilly with a high-powered rifle. The Defendant and Seltzer then transported the body of Adam Lilly into the State of Mississippi where they threw the body off a bridge and into the bed of Coleman Creek near New Augusta, Mississippi. The Court finds those facts beyond a reasonable doubt.
 "The Defendant had, prior to the intentional killing, been paid a large sum of money by unknown persons in exchange for the Defendant intentionally killing Adam Lilly, and the Court so finds beyond a reasonable doubt and to a moral certainty, as charged in Count One of the indictment. Count One, charging such payment by one Joseph Washington, Sr., *Page 505 
and other persons unknown to the Grand Jury, is thus sustained beyond a reasonable doubt, inasmuch as under the authority of House v. State, 380 So.2d 940; Golston v. State, 357 So.2d 668, cert. den., 357 So.2d 671; Wesson v. State, 251 Ala. 33
[36 So.2d 361 (1948)]; and McElhaney v. State, 24 Ala. 71, the State has met its burden of proving beyond a reasonable doubt so much of those material allegations of the indictment as substantially constitute the offense charged therein; proof of one prong of facts charged conjunctively suffices.
 "The Defendant's purpose in intentionally killing Adam Lilly was to prevent Adam Lilly from testifying on behalf of the State of Alabama in the murder trial of State of Alabama vs. Joseph Washington, Jr., criminal case number CC 83-917, in the Circuit Court of Mobile County, Alabama, and the Court so finds beyond a reasonable doubt and to a moral certainty. Prior to the intentional killing of Adam Lilly, a subpoena had been issued by first class mail to Adam Lilly commanding his appearance as a witness on behalf of the State of Alabama in the above-referenced murder trial, which was then set for trial on May 23, 1983. The subpoena was issued on May 13, 1983. The Joseph Washington murder trial was continued from May 23, 1983, and reset for trial on September 19, 1983.
 "The Court finds that the issuance of this subpoena for the aforesaid trial date meets the requirement of § 13A-5-40(a)(14) of the Code of Alabama that the victim 'had been subpoenaed, to testify' in a criminal trial. Any other finding would thwart the plain meaning of the statute. Clearly, the victim had been subpoenaed to testify in said trial, and the postponement of said trial is of no relevance whatsoever to § 13A-5-40(a)(14). To read otherwise would be to hold that criminals could evade the plain intent of the legislature by murdering subpoenaed witnesses after a case was postponed and before new subpoenas were issued. The intent of the legislature is to proscribe the intentional killing of subpoenaed witnesses at any time so long as the intentional killing 'stems from, is caused by, or is related to' the victim's capacity as a witness.
 "Similarly, the issuance of a subpoena without proof of actual service meets the statutory requirement of 'has been subpoenaed'. The Court finds that the 'has been subpoenaed' requirement was utilized by the legislature in order for there to be an objective criterion that the victim was, in fact, a witness, or to be a witness, and thereby to give adequate warning of the crime delineated. This requirement is reasonably met by subpoena issuance alone. Indeed, to hold otherwise would be to thwart the legislative intent by enabling criminals to murder witnesses prior to actual service of an issued subpoena.
 "Notwithstanding the above, the Court does find service of the subpoena beyond a reasonable doubt pursuant to § 12-21-246 of the Code of Alabama, which provides that issuance of a subpoena by the Sheriff by first class mail constitutes prima facie evidence of service where the Court has directed such service. The Court judicially notes that, by order of the Presiding Judge of this Circuit, all criminal subpoenas have been directed to be served by first class mail unless either party requests otherwise, since prior to the time of the issuance of the Lilly subpoena.
 "Count Two of the indictment is thus sustained beyond a reasonable doubt.
 "The Court further finds, beyond a reasonable doubt, that the Defendant intentionally killed Adam Lilly for pecuniary gain; that is, the purpose of the intentional killing was the obtaining of money from sources other than the victim, in this instance unknown persons. Count Three of the indictment is therefore sustained beyond a reasonable doubt."
The record supports these findings.
Willie Eugene Hardy testified that he overheard McCall tell Vaughn that he killed Adam Lilly and that if he got convicted, *Page 506 
"He wasn't going down by hisself, he was going to take Seltzer with him."
Thomas Neal Johnson testified that shortly before Lilly's death, McCall asked him if he "wanted to make" $1000 just to drive his car "to take Adam off." McCall "had a nice roll of money in his pocket." Johnson was afraid to testify because McCall "had put some threats out and say if I come over here and testify, he was going to have me killed, try to get somebody to kill me."
Douglas Parker testified that McCall told him that he "took the money for the exchange of somebody that's supposed to be testifying against a person on a ch — case, and that he was supposed to have been getting him out of the way before they — so he couldn't testify." The case was a "double murder" case and McCall told Parker that he got the money before the killing and provided details of the murder and the disposal of the body.
Detective John Boone testified that he investigated the case of State of Alabama v. Joseph Washington, Jr., a capital case involving the double murder of Sherry Collins and Lester Mitchell. Adam Lilly was an important "identifying eyewitness" in that case. Detective Boone testified that "one reason" Lilly was killed was "to avoid his having testified in a case involving Joe Washington." Boone also stated that Joseph Washington, Sr., who allegedly paid for Lilly's murder, had not been charged with any offense.
Detective Boone testified, in impeachment of Vaughn's testimony, that Vaughn had told him that McCall and Robert Seltzer killed Lilly; that Vaughn told him that McCall had said that he and Seltzer "took him off and killed him." Boone testified that Vaughn had said that McCall killed Lilly "because the Washington family had been good to Larry and it was — he killed Adam in part as a favor to the Washington family."
Detective Wilbur Williams also testified that Vaughn had said that McCall had told him (Vaughn) that McCall had killed Lilly.
David Vaughn identified himself as a "close friend" of McCall's and testified that the "street talk" was that Lilly was killed so that "he wouldn't have to testify against" Washington.
This constituted the State's case in chief.
There was no evidence of who paid McCall to murder Lilly and there was nothing to show that McCall was paid "by or at the direction of one Joseph Washington, Sr., and other persons" as charged in count one of the indictment.
The statutory offense defined by Alabama Code 1975, §13A-5-40(a)(7), under which this count of the indictment was framed, classifies "[m]urder done for a pecuniary or other valuable consideration or pursuant to a contract for hire" as a capital offense. This statute does not require proof of the actual killer's accomplice. While one is guilty of murder if he hires another to kill the deceased, Handley v. State,214 Ala. 172, 175, 106 So. 692 (1925), the statute does not require proof of the identity of the accomplice who furnished the "pecuniary or other valuable consideration." We view that portion of count one of the indictment which alleges that McCall would be paid "by or at the direction of one Joseph Washington, Sr., and other persons whose identities are presently unknown to the grand jury" as mere surplusage and an unnecessary averment.
"As early cases have held, unnecessary averments in an indictment do not impair its validity. The most that can result from them is to hold the prosecution to the proof of them. . . . Surplusage does not vitiate an indictment otherwise good. . . . As long as the remaining portions of an indictment validly charge a crime, the existence of surplusage will not affect the validity of a conviction." Tomlin v. State,443 So.2d 47, 52 (Ala.Cr.App. 1979) (citations omitted), affirmed, Exparte Tomlin, 443 So.2d 59 (Ala. 1983), cert. denied,466 U.S. 954, 104 S.Ct. 2160, 80 L.Ed.2d 545 (1984) (language of indictment that "killings were especially heinous, atrocious or cruel" constituted mere surplusage). *Page 507 
 "The rule in our State is that an allegation in an indictment which is but mere surplusage may be disregarded — it is immaterial for any purpose. The exception to this rule — which does not occur in this case — is that if the allegation (constituting surplusage) 'is descriptive of the fact or degree of the crime, or is material to the jurisdiction' it must be proved as alleged. See McGehee v. State, 52 Ala. 224." Brown v. State, 30 Ala. App. 339, 343, 7 So.2d 24 (1941) (emphasis in original).
"Surplusage in an indictment, . . . sometimes increases the proof the pleader is bound to make, and though the averment is wholly unnecessary, if the proof is variant from it, the variance is fatal. In an indictment this occurs whenever the averment is descriptive of the fact or degree of the crime, or is material to the jurisdiction." McGehee v. State,52 Ala. 224, 225 (1875). "However, our Alabama case law is clear that there must be a material variance between indictment and proof before a conviction will be overturned for that reason." Ex parte Collins, 385 So.2d 1005, 1009
(Ala. 1980). "To be material, a variance . . . must be such as to be misleading or substantially injurious to accused in making his defense, or to expose him to the danger of a second trial on the same charge." Rupert v. State,45 Ala. App. 84, 86, 224 So.2d 921, 923 (1969). "The law of this state is well settled that '[t]here is no material variance where there is proof of so much of an indictment as shows the defendant committed a substantial offense specified therein.'Dotson v. State, 337 So.2d 83 (Ala.Cr.App. 1976)."House v. State, 380 So.2d 940, 943 (Ala. 1979).
We do not consider the State's failure to prove that Joseph Washington, Sr. paid McCall to kill Lilly, as alleged in the indictment, descriptive of the fact or degree of the crime, or material to the jurisdiction.
With regard to Count II of the indictment, we agree with the observations of the trial judge. Alabama Code 1975, §13A-5-40(a)(14), condemns "[m]urder when the victim is subpoenaed, or has been subpoenaed, to testify, in any . . . criminal trial . . . when the murder stems from, is caused by, or is related to the capacity or role . . . as a witness."
When Lilly was killed there was no "outstanding subpoena" because the trial had been "passed" from the date for which he had been subpoenaed. In addition to the trial judge's interpretation set out in his findings, Detective Boone testified that, after the case was passed from the first trial setting, Lilly "was considered to be a very important identifying eyewitness, and was still under subpoena to come to court at a later time." The actual subpoena served on Lilly states, "You are ORDERED TO APPEAR before the court as stated below until otherwise excluded." (Emphasis added.)
 V
McCall states that "the prosecuting attorney made several improper, vindictive and grossly prejudicial statements in his closing argument to members of the jury." Twenty-four instances of improper comment are cited. In no instance was there any objection. Hence, there is nothing for this Court to review.Embrey v. State, 283 Ala. 110, 120, 214 So.2d 567
(1968). "The general rule is that improper argument of counsel is not ground for a new trial or the subject of review on appeal unless there is due objection by counsel or a motion to exclude, a ruling thereon by the court, an exception thereto, or a refusal of the court to make a ruling." Johnson v.State, 272 Ala. 638, 636, 133 So.2d 53 (1961). Here, the prosecutor's remarks were not so highly prejudicial or grossly improper as to constitute plain error. Nichols v.State, 267 Ala. 217, 221, 100 So.2d 750 (1958);Jackson v. State, 260 Ala. 641, 644, 71 So.2d 825
(1954).
 VI
The trial judge's comment to defense counsel, "I expect you to be able to prove the questions you're asking" was made "at bench" and was "inaudible to *Page 508 
jury." McCall's argument that this statement constituted an improper comment on the evidence is without legal or factual merit.
 VII
McCall raises numerous other issues of alleged prosecutorial misconduct and constitutional violations in a conclusionary and summary fashion. Our review convinces us that there is neither factual nor legal merit in these allegations and that they do not warrant further analysis or discussion. The trial was a hard fought legal contest. Although both sides were aggressive and resolute in the presentation of their positions, no foul blows were struck.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.